S. Samuel DiFalco, S.
Testatrix died on April 7, 1970. Her will, dated January 30,1967, was admitted to probate on June 9, 1970 and letters testamentary issued on June 24, 1970.
In paragraph sixth thereof she created a perpetual charitable trust to be known as ‘ ‘ the jeanne e. and jacob a; barkey memorial fund ”, hereinafter referred to as the Trust. Jacob A. Barkey was the' husband of the testatrix and died on February 6, 1961.
Paragraph sixth reads as follows:
‘ ‘ sixth : All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated, including specifically so much of the estate of my late husband, jacob a. barkey, over which I have the power of appointment, pursuant to paragraph (b) of Article III of his Last Will and Testament, or otherwise, I devise and bequeath to my trustees hereinafter named and to their successors, in trust nevertheless, for the following uses and purposes:
‘ ‘ To invest, reinvest and keep the same invested in perpetuity in a fund to be known as the jeanne e. and jacob a. barkey memorial fund and to collect and receive the income therefrom and to pay over and distribute the same as follows:
“Five per cent (5%) thereof to the home for aged and infirm Hebrews of new york, now having its principal office *740 at No. 121 West 105th Street, Borough of Manhattan, New York, N. Y., to he used and applied for the upkeep, maintenance and operation of the home, or homes or apartment residences owned or operated by it.
“ Five per cent (5%) thereof to sephardic home for the aged inc., now having its principal office at No. 2266 Cropsey Avenue, Borough of Brooklyn, New York, to be used and applied for the upkeep, maintenance and operation of the home.
“ Twenty per cent (20%) thereof to the new york guild for the Jewish blind, now having its principal office at No. 1880 Broadway, Borough of Manhattan, New York, N. Y., to be used and applied for the upkeep, maintenance and operation of the home, or homes or building owned or operated by it.
1 ‘ Fifty per cent (50%) to the new york ganger research institute, inc., now having its principal office at No. 1290 Madison Avenue, Borough of Manhattan, New York, N. Y., for its general and corporate purposes. If in the sole discretion of my trustees the incidence of cancer is substantially reduced or eliminated through newly discovered cures or treatments, I authorize and direct my trustees to pay said per cent of income to and among such charitable organizations exempt by law from New York State and Federal income taxes as they may determine for the treatment, cure and remedy of diseases known as incurable at that time.
“ Twenty per cent (20%) thereof to and among such religious, educational or charitable corporations, trusts or other institutions exempt by law from New York State and Federal income taxes in such amounts as they may, from time to time, in their sole discretion determine.
“ Should any of the three corporations above named cease to exist or change the nature of its activities or purposes so materially as to no longer be carrying on the charitable work in which it is presently engaged, then I authorize and direct my trustees, in their discretion, to pay the share of income hereinabove given to such organization cy pres, but no corporation, trust or other organization not exempt from New York State and Federal income tax shall be eligible to receive any distribution to be so applied.”
The executors apply for a decree directing that testatrix’ will be deemed to be amended, or, in the alternative, construed to contain certain provisions which will comply with the changes made by subdivision (a) of section 101 of title I of the Tax Reform Act of 1969 (Public Law 91-172; 83 U. S. 'Stat. 487, 494, 496) which added subdivision (e) of section 508 to the *741 Internal Revenue Code of 1954. It became effective on December 31, 1969. Petitioners allege that the trust will initially receive funds from three sources, i.e.:
(a) an undetermined sum from this estate;
(b) approximately $550,000 from the trustees of an inter vivos trust created by this decedent by agreement dated October 9, 1967; and
(c) $200,000 from the trustees of the Jacob A. Barkey estate by virtue of the power of appointment in his will which was executed by this decedent in favor of the trust.
Although testatrix created a trust, it comes within the purview of section 501 (subd. [c], par. [3]) of the Internal Revenue Code and was intended to qualify as an organization described therein which would be exempt from Federal income taxes. Contributions to it would be deductible by the donors as provided in section 170 of said code. Bequests, legacies, devises, transfers or gifts to it would be deductible for Federal estate or gift tax purposes under the provisions of sections 2055, 2106 and 2522 of said code.
Subdivision (e) of section 508 of the code reads as follows:

“ Governing instruments.

“ (1) General rule.— A private foundation shall not be exempt from taxation under section 501(a) unless its governing instrument includes provisions the effects of which are —
“ (A) to require its income for each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942, and
“(B) to prohibit the foundation from engaging in any act of self-dealing (as defined in section 4941(d)), from retaining any excess business holdings (as defined in section 4943(c)), from making any investments in such manner as to subject the foundation to tax under section 4944, and from making any taxable expenditures (as defined in section 4945(d)).
“ (2) Special rules for existing private foundations.— In the case of any organization organized before January 1, 1970, paragraph (1) shall not apply-—
“ (A) to any taxable year beginning before January 1, 1972,
“(B) to any period after December 31, 1971, during the pendency of any judicial proceeding begun before January 1, 1972, by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to meet the requirements of paragraph (1), and
*742 “(C) to any period after the termination of any judicial proceeding described in subparagraph (B) during which its governing instrument or any other instrument does not permit it to meet the requirements of paragraph (1).”
Since this decedent did not die until April 7, 1970 and her will creating the trust was not admitted to probate until June 9, 1970, it appears that the saving provisions titled “ Special rules for existing private foundations” do not apply to it. Petitioners allege that since the trust is a “private foundation ” within the meaning of subdivision (e) of section 508 of the code, it will have no status as a tax exempt organization unless or until its governing instrument, i.e. the will of the testatrix, includes the provisions referred to in said section. Petitioners have been informed that the income to be received from the inter vivos trust will be subject to Federal, State and city income taxes. Similarly as the executors of this estate and the trustees under the will of Jacob A. Barkey are presently accumulating income, it will be subject to income taxes unless the trust is qualified.
Ruling 70-270 (1970 Int. Rev. Serv. Bull. No. 22 at 8) states: 6 ‘ a private foundation shall not be exempt under section 501(a) unless its governing instrument includes provisions the effects of which are:
“ (A) to require its income for each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942, and
“(B) to prohibit the foundation from engaging in any act of self-dealing (as defined in section 4941(d), from retaining any excess business holdings (as defined in section 4943(c), from maldng any investments in such manner as to subject the foundation to tax under section 4944, and from making any taxable expenditures (as defined in section 4945(d).” Petitioners seek to have the trust deemed amended so as to include certain provisions in conformity with Internal Revenue Service Treasury decision 7040 (1970 Int. Rev. Bull. No. 23 at 20) which states:
“ (a) In general. Under section 508(e) of the Internal Revenue Code of 1954 a private foundation (as defined in section 509 of the Code) generally, shall not be exempt under section 501 (a) of the Code unless its governing instrument contains certain provisions. These provisions, generally, must require or prohibit, as the case may be, the foundation to act or refrain from acting so that it shall not be liable to the taxes imposed by sections 4941, 4942, 4943, 4944 and 4945 of the Code. *743 Private foundations organized before January 1, 1970, are not subject to the requirements of such section 508 (e) with respect to taxable years beginning before January 1, 1972.
“ (b) Mamner of satisfying requirements of section 508(e). A private foundation may satisfy the requirements of section 508(e) if its governing instrument is amended as required by such section. A private foundation’s governing instrument shall be deemed to have been so amended if valid provisions of State law have been enacted which:
“ (1) Require it to act or refrain from acting so as not to subject the foundation to the taxes imposed by sections 4941 (relating to taxes on self-dealing), 4942 (relating to taxes on failure to distribute income), 4943 (relating to taxes on excess business holdings), 4944 (relating to taxes on investments which jeopardize charitable purpose), and 4945 (relating to taxable expenditures), or
“ (2) Treat the required provisions as contained in the foundation’s governing instrument.”
■Specifically the petitioners seek the following relief by way of amendment or construction, any other provisions of the will notwithstanding:
(a) That the income of the trust for each taxable year shall be distributed at such time and in such manner as not to become subject to the tax on undistributed income imposed by section 4942 of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent Federal tax laws. (Section 4942 imposes a tax of 15% on the undistributed income of a private foundation which has not been distributed by the end of the tax year following the order of receipt. If the distribution is not made within a defined correction period, an additional tax of 100% of the undistributed amount is imposed);
(b) That the trustees shall not engage in any act of self-dealing as defined in subdivision (d) of section 4941 of the 1954 code or corresponding provisions of any subsequent Federal tax laws. (Subdivision (d) of section 4941 treats with the subject of “ self-dealing ”, defined as direct or indirect dealing between a private foundation and its managers and directors in such matters as sale, exchange, etc., of property, lending of money or extension of credit, furnishing of goods and services, and payment of compensation. Substantial taxes are imposed for each act of self-dealing.);
(c) That the trustees shall not retain any excess business holdings as defined in subdivision (c) of section 4943 of the 1954 code or corresponding provisions of any subsequent *744 Federal tax laws. (Section 4943 deals with “ excess business holdings ” and imposes taxes on a foundation which holds a controlling interest in a business enterprise.);
(d) That the trustees shall not make any investments in such manner as to incur tax liability under section 4944 of the 1954 code, or corresponding provisions of any subsequent Federal tax laws. (Section 4944 imposes a tax on a foundation where its investments are made in such manner as to jeopardize the carrying out of any of its exempt purposes.);
(e) That the trustees shall not make any taxable expenditures as defined in subdivision (d) of section 4945 of the 1954 code, or corresponding provisions of any subsequent Federal tax laws. (Section 4945 defines taxable expenditures which fall within new categories of prohibited distributions, such as propaganda or other attempts to influence legislation; certain attempts to influence the outcome of specific public elections or to carry out voter registration drives; grants to individuals for study, travel, or similar purposes unless the grants are awarded on an objective and nondiscriminatory basis, and grants to organizations other than public charities, unless the granting organization exercises expenditure responsibility for the grant.) The citation issued to the four charitable organizations named in paragraph sixth of the will and to the Attorney-General of the State of New York. One charity has appeared but has taken no active part. The Attorney-General has appeared. He has filed an answer in which he alleges that it is his responsibility to represent charitable beneficiaries and his duty to enforce and protect their rights by appropriate proceedings in the court (EPTL 8-1.1, subd. [f]; 8-1.4; St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115, 119 [1939]; Matter of James, 22 Misc 2d 1062, 1067 [Surr. Ct., N. Y., 1953]; Matter of Stanley, 59 Misc 2d 232 [Surr. Ct., N. Y. 1969]).
He avers that under the Tax Reform Act of 1969, it will be necessary for him to take action, both administrative and legal, to correct any violations by foundation or charitable trust administrators of sections 4941 to 4945 of the Internal Revenue Code inclusive. He recites that this court has inherent and statutory general supervision of the administration of trusts and authority to authorize the relief sought herein; and that the relief is in accord with the general doctrine of trust law of the State of New York pertaining to such matters as self-dealing by a fiduciary, accumulation of income, diversification of investments, avoidance of conflict of interest, speculative investments, the prudent man rule, and the invalidity of a trust *745 for political purposes. He asserts that it is essential for the protection of the ultimate charitable beneficiaries of this trust that a decree be entered directing that the will be deemed to be amended, or in the alternative, be construed to contain the aforesaid provisions required by the Internal Revenue Code. He supports the prayer of the petitioners.
It must be noted that some prohibited transactions under the tax act are transactions forbidden to trustees generally, such as self-dealing. Other transactions are prohibited to the trustees of this trust by virtue of the testator’s declaration of intention, expressed thrice in this one paragraph of the will, that only charities exempt from Federal and State income tax shall be eligible beneficiaries under his will. There is the implicit mandate to his trustees to administer the trust in a manner in keeping with this frequently declared purpose. Nevertheless what is sought in this proceeding is a decree specifically limiting and directing the trustees to act as required by the tax act, because of the belief that the prohibitions and directions must be set forth in the charter of the trust, which, of course, is the will as construed by this court, or as amplified or restricted under the cy pres power. (EPTL 8-1.1, subd. [c]; 3 Scott, Trusts [3d ed.], p. 1967.)
In Trustees of Sailors’ Snug Harbor v. Carmody (158 App. Div. 738, 752 [1913], affd. 211 N. Y. 286 [1914]), the Appellate Division of this Department observed that ‘ ‘ while courts of equity, as such, possess no power to create a charitable trust, they liberally exercise a jurisdiction to enforce and preserve such a trust, when it is valid in its creation ’ ’. The court continued: “ It is a natural and necessary branch of the jurisdiction over charitable trusts that the means or details prescribed for their administration should be subject to be moulded so as to meet any exigency which may be disclosed by a change of circumstances, and, to relieve the trust from a condition which imperils or endangers the charity itself or the funds provided for its endurement and maintenance.”
In Matter of Herzog (301 N. Y. 127, 138 [1950]), the court said: “Authority is ample for the proposition that a court in the exercise of its equitable powers may control the administration of a trust so as to effectuate its avowed purpose, particularly when changing circumstances would otherwise defeat it (e.g. see authorities collected in 2 Scott on Trusts, § 167; 4 Pomeroy’s Equity Jurisprudence [5th ed.], § 1309).”
The power of this court over the administration of trusts is well settled (Matter of Pulitzer, 139 Misc. 575 [Surr. Ct., N. Y., *746 1931], affd. 237 App. Div. 808 [1932]). Surrogate Foley, quoting from Johns v. Montgomery (265 Ill. 21), stated in Matter of Pulitzer (pp. 581-582): ‘1 Exigencies often arise not contemplated by the party creating the trust, and which, had they ■been anticipated, would undoubtedly have been provided for, where the aid of a court of chancery must be invoked to grant relief imperatively required, and in such cases the court must, as far as may be, occupy the place of the party creating the trust and do with the fund what he would have dictated had he anticipated the emergency”.
See, also, Scott, Trusts (vol. 4, § 381, pp. 2987-2988) where it is stated: “ There is greater occasion for the exercise of the power of the court to permit or direct a deviation from the terms of the trust in the case of charitable trusts than in the case of private trusts, since charitable trusts may continue for an indefinite period and changes in conditions not foreseen by the settlor are therefore more likely to occur. Moreover, in the case of charitable trusts the court has power not merely, as in the case of private trusts, to permit deviations as to matters relating to the administration of the trust, but also as to the purposes of the trust. This power of the court, under the so-called doctrine of cy pres, goes quite beyond anything which is permitted in the case of private trusts.”
The article entitled “ Hidden Grantor Trusts ” in 103 Trusts and Estates at page 269 (March, 1964) concerning relief for unexpected tax on capital gains discusses applications granted by the Supreme Court, New York County, permitting deviations from inter vivos trust agreements affected by Treasury Regulation (§ 1.674 [b]-l, subd. [b], par. [3]; Code of Fed. Reg., tit. 26, § 1.674 [b]-1, subd. [b], par. [3]), under which the creator of a trust who reserved to himself a testamentary power of appointment over the corpus, became liable for taxes on capital gains realized by the trust on and after January 1, 1954.
In order to give effect to the charitable intentions of the testatrix and to enable the trust to comply with the requirements of said subdivision (e) of section 508, the court directs the trustees to administer the funds now or hereafter in their hands under paragraph sixth of the will pursuant to the following conditions with the same force and effect as if these provisions were contained herein, and for all purposes said provisions shall be deemed to be contained in paragraph sixth of the will, anything to the contrary appearing elsewhere in said will notwithstanding. The changes thus effected are as follows:
*747 (a) The income from the trust for each taxable year shall be distributed at such time and in such manner as not to become subject to the tax on undistributed income imposed by section 4942 of the Internal Revenue Code of 1954 or corresponding provision of any subsequent Federal law. There is no difficulty in complying with this requirement. The will explicitly authorities the trustees ‘ ‘ to distribute any part of, or all of, the principal, free of trust, to any one or more of the organizations then entitled to receive the income therefrom ”, limiting the trustees only to the proportionate share of each charity, and it also clearly states the testatrix’ intent to maintain exemption from State and Federal income taxes in the distribution of income and principal.
(b) The trustees shall not engage in any act of self-dealing as defined in subdivision (d) of section 4941 of said Internal Revenue Code or in corresponding provision of any subsequent Federal tax law;
(c) The trustees shall not retain any excess business holdings as defined in subdivision (d) of section 4943 of said code or corresponding provision of any subsequent Federal tax law;
(d) The trustees shall not make any investments in such manner as to incur tax liability under section 4944 of said code or corresponding provision of any subsequent Federal tax law; and
(e) The trustees shall not make any taxable expenditures as defined in subdivision (d) of section 4945 of said code or corresponding provision of any subsequent Federal tax law.
The compensation of the attorneys for the petitioners will be fixed upon the submission of an affidavit of services together with the decree hereon upon notice.