S. Samuel Di Falco, S.
The executors seek a construction of paragraphs Fourth and Sixth of the decedent’s will and direction that the gifts required to be maintained for the life beneficiaries be administered so as to meet the requirements of the Tax Reform Act of 1969 (83 US Stat 487, as amd).
The testatrix died on April 15, 1973 leaving a will which she executed on October 18, 1968 which was admitted to probate June 1, 1973.
Paragraphs Fourth and Sixth read as follows: "Fourth: I direct my Co-executors to sell all of my jewelry, household effects, furniture, fixtures, clothing, silverware and all other contents of my home, with the exception of my furs and Kerman rug heretofore given to my godchild, Denise Behrens, and my friends, George C. Moore and Audrey Moore, respectively. The proceeds of such sale, less any expense involved in such sale, I direct to be paid over, and I give and bequeath accordingly, to the American society for the prevention of cruelty to animals, a New York corporation, with headquarters at 441 East 92nd Street, New York, New York 10028, for inclusion in their general fund out of which is financed the general work of the Society.
"I direct my Co-executors to continue to hold and keep invested all the stock, common» and preferred, which I shall own at the time of my decease in the beneficial finance co., with headquarters at 1300 Market Street, Wilmington, Delaware, and pay all income therefrom to or for the benefit of irma anderson, now residing at 318 East 93rd Street, New York, New York 10028, so long as she may live. Upon her death, I direct my Co-executors to transfer, and I give and bequeath accordingly, the securities to the catholic charities of the archdiocese of new york, New York Membership Corporation, with headquarters at 122 East 22nd Street, New York, New York, (present Chairman, Monsignor Head).
"sixth: I direct my Co-executors to continue to hold and keep invested all of the securities in the form of common stock in Tampax Inc., a New York corporation, with offices at 161 East 42nd Street, New York, New York 10017, and pay all income therefrom to or for the benefit of margaret olpp mccook, now residing at 4705 Henry Hudson Parkway, River-dale, New York, so long as she shall continue to live. Upon *976 the death of the said Margaret olpp mccook, I direct my Co-executors to transfer, and I give and bequeath accordingly, the securities to the catholic charities of the archdiocese of new york, New York Membership Corporation, aforesaid, to be used for general purposes of such Catholic Charities organization.”
As was stated in Matter of Fabbri (2 NY2d 236, 239-240):
"The prime consideration here as in all construction proceedings is the intention of the testator as expressed in the will. All rules of interpretation are subordinated to the requirement that the actual purpose of the testator be sought and effectuated as far as is consonant with principles of law and public policy.
"This intent, as we have often said, must be gleaned not from a single word or phrase but from a sympathetic reading of the will as an entirety and in view of all the facts and circumstances under which the provisions of the will were framed.”
The testamentary scheme disclosed from a reading of the will is primarily charitable. Under the terms and conditions thereof, with the exception of specific bequests of a rug, certain furs, a pecuniary bequest of $5,000 and the life estates under the above-quoted provisions of articles Fourth and Sixth all of the beneficiaries interested in this estate are charitable in nature. There are no provisions for the invasion of principal for the life beneficiaries. Petitioners state that the total valuation of the noncharitable gifts (other than the life estates) does not exceed $6,000. The approximate value of this estate is $734,094.03.
The question to be first resolved in these proceedings is whether articles Fourth and Sixth effectively create trusts even though the words "trust” and "trustees” are not mentioned.
By the terms of paragraph Ninth (A) of the will the executors are empowered to sell any of the securities they hold on such terms as seem proper to them and to invest the estate funds in any securities they choose. The duties imposed on the executors pursuant to the will to "hold and keep invested all the stock” in each of two named corporations and the direction to pay the income to named life beneficiaries with remainders to charity, must be harmonized with the powers granted the executors and when so considered an intention to create a trust may be reasonably inferred.
*977 It is the well-settled law in this State that the formal use of the words "trust” or "trustee” is unnecessary to create a trust (1 Scott on Trusts [3d ed], § 24, p 192): "No particular form of words or conduct is necessary for the manifestation of intention to create a trust. It is possible to create a trust without using the word 'trust’ or 'trustee.’ Conversely, the mere fact that these words are used does not necessarily indicate an intention to create a trust. The question in each case is whether the settlor manifested an intention to create the kind of relationship which to lawyers is known as a trust, that is to say, whether the settlor manifested an intention to impose upon himself or upon a transferee of the property equitable duties to deal with the property for the benefit of another person.” (Morse v Morse, 85 NY 53; Mee v Gordon, 187 NY 400; Matter of Dewey, 153 NY 63; Mizrahi v Mizrahi, 57 Misc 2d 1021; Matter of Banks, 68 NYS2d 857.)
The essential elements of a valid trust of personal property are:
1. A designated beneficiary;
2. A fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee;
3. The actual delivery of the fund or other property; and
4. A designated trustee. (Brown v Spohr, 180 NY 201, 209.)
In light of the criteria alluded to, the court determines that it was the intent of the testatrix to create charitable remainder trusts and to constitute her executors as trustees thereof.
The court further finds that the securities of the two named corporations are encompassed within the language of article Ninth , (subd A) notwithstanding the language contained in articles Fourth and Sixth with regard to retention of those securities.
The difficulty encountered in this proceeding arises from the fact that the will was drawn prior to the changes in the Internal Revenue Code with regard to charitable remainder trusts. Petitioners correctly point out that by the Tax Reform Act of 1969 the Internal Revenue Code of 1954 (US Code, tit 26, § 2055) was amended to remove the possibility of a charitable deduction where the charitable gift is postponed unless the remainder interest which the charity is to receive is the remainder of a "charitable remainder annuity trust” or a "charitable remainder unitrust.” The Internal Revenue Code as amended does not exempt former charitable trusts which *978 were entitled to the deduction under prior law from taxation but does permit judicial amendment or reformation of such trusts in a proceeding instituted for that purpose.
The terminal dates for such proceedings have been extended from time to time and the present terminal date is December 31, 1975. (88 US Stat 1457, § 3.)
In view of the foregoing and the facts and circumstances here presented and to preserve the general charitable intent of the testatrix as disclosed, the provisions of her will are construed to conform with the declared public policy of the United States and the State of New York. The court determines that the testatrix intended to provide a charitable remainder unitrust as defined in the Treasury Regulations (tit 26, CFR, § 1.664-3). (Matter of Larus, 78 Misc 2d 122; Matter of Presley, 76 Misc 2d 462; Matter of Barkey, 65 Misc 2d 738; Matter of Bird, 69 Misc 2d 1015; Matter of Klosk, 65 Misc 2d 1005; see, generally, Kartiganer and Lustgarten, Reformation and Renunciation in Charitable Remainder Trusts, NYLJ, June 16, 1975, p 19, col 3.)
The life beneficiary of the trust created in article Sixth has died and the principal of that trust has thus become distributable to the charitable remainderman. The court is advised by the petitioners that the security presently comprising the corpus of the trust under article Fourth is providing an income return of 8% per year and it is proposed that a unitrust amount of 8% be provided for the income beneficiary.
The Internal Revenue Code (US Code, tit 26, § 664) defines a charitable remainder unitrust as one from which a sum certain (which is not less than 5%) of the initial net fair market value of all property placed in trust is to be paid, not less often than annually, "to one or more persons (at least one of which is not an organization described in section 170 [c])”.
In this estate, the testatrix, by not granting the trustees any power to invade the corpus and by granting to them the power to manage the corpus through sales and exchanges, whether private or public, has in effect given the trustees the power to see to it that the required percentage will be paid to the life tenant under the unitrust provisions of the Tax Reform Act of 1969 and at the same time safeguard the corpus, which of a certainty will pass to the charitable remainderman, against diminution not in keeping with the clear charitable intent of testatrix’ estate plan.
In order to harmonize the investment experience of the *979 trustees and the expectation of the surviving life beneficiary with the language of the will (which created trusts to pay income) and because there is no guarantee that the fund will continue to produce income at the rate of 8%, the court determines that the deceased life beneficiary was, and the surviving life beneficiary is, to receive a unitrust interest of the type authorized in the Internal Revenue Code (US Code, tit 26, § 664, subd [d], par [3]). The trustees shall pay to the surviving unitrust recipient in monthly installments in each taxable year of the trust during her life an amount equal to the lesser of (a) the trust income for such taxable year (as defined in the Internal Revenue Code [US Code, tit 26, § 643, subd (b)] and the regulations thereunder) and (b) 8% of the net fair market value of the trust assets valued as of the first day of such taxable year; if the trust income for any taxable year exceeds the amount determined under (b), the payment to the unitrust recipient shall also include such excess income to the extent that the aggregate of the amounts paid to the unitrust recipient in prior years is less than 8% of the aggregate net fair market value of the trust assets for such years. Appropriate adjustment shall be made between the trustees and the estate of the deceased life beneficiary.
As is required by the law and policy of this State, it is directed that the trusts be administered in accordance with EPTL 8-1.8 and the relevant provisions of the Internal Revenue Code and the regulations thereunder.
Submit decree on notice accordingly.