54 Cal.App.3d 969 (1976)
127 Cal. Rptr. 233
Estate of BELLA MABURY, Deceased.
RALPH KOHLMEIER, as Trustee, etc., Petitioner and Respondent,
v.
CHRISTIAN SCIENCE BOARD OF DIRECTORS OF THE MOTHER CHURCH, FIRST CHURCH OF CHRIST, SCIENTIST, BOSTON, MASSACHUSETTS et al., Claimants and Appellants; BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, Claimant and Respondent; EVELLE J. YOUNGER, as Attorney General, Respondent.
Docket No. 46149.
Court of Appeals of California, Second District, Division Four.
January 28, 1976.
*972 COUNSEL
Paul, Hastings, Janofsky & Walker, Edward D. Spurgeon, Richard K. Roeder, Charles M. Walker, David B. Harriman, John R. Peterson, O'Melveny & Myers, David D. Watts, John F. Aiso and David E. Gordon for Claimants and Appellants.
Parker, Milliken & Kohlmeier, Clark & O'Hara, Floyd M. Lewis, Paul J. Livadary and Jeffrey L. Glassman for Petitioner and Respondent.
McCutchen, Doyle, Brown & Enerson and Albert J. Moorman for Claimant and Respondent.
Evelle J. Younger, Attorney General, and James M. Cordi, Deputy Attorney General, for Respondent.
OPINION
JEFFERSON (Bernard), J.
This is an appeal and cross-appeal from an order of the probate court directing distribution of income of a testamentary charitable trust.[1]
Bella Mabury died October 16, 1964. Her will, dated September 29, 1961 (including two subsequent codicils), was admitted to probate on November 9, 1964. The order for preliminary distribution, which established her testamentary trust, was entered on September 24, 1965.
The trust instrument provided that, during the existence of the trust, trust income was to be accumulated and to become principal of the trust estate. After the decease of Eloise Mabury Knapp, a sister of the testatrix, the trust was to terminate whenever either of the following events first occurred: (1) when The Mother Church, The First Church of Christ, Scientist, in Boston, Massachusetts, and the Trustees of the Christian Science Publishing Society (hereinafter referred to as the Church) shall have caused to be published as official church literature a certain book, written by Bliss Knapp, entitled "The Destiny of the Mother Church" (hereinafter referred to as The Book) as specified in the *973 trust instrument; or (2) upon the expiration of 21 years after the death of the last survivor of Eloise Mabury Knapp, Ralph Kohlmeier and Walter R. Hilker, Jr.
The trust instrument further provided that, if the trust terminated by reason of publication of The Book, the entire trust estate was to be distributed to the Church. If the trust terminated because of the passage of 21 years after the death of the last survivor specified therein, the trust estate was to be distributed in equal shares to Museum Associates, a California corporation (hereinafter referred to as Museum), and Stanford University (hereinafter referred to as Stanford). The trust instrument expressly stated that it was Bella Mabury's intention that the Church have the maximum time allowed by law to comply with the publishing requirement, and that the trust could not be terminated by agreement of the beneficiaries or by reason of any beneficiary relinquishing its interest in the trust.
Subsequently, Congress enacted the Tax Reform Act of 1969 (Pub. L. 91-172, Dec. 30, 1969, 83 Stat. 487), which amended the Internal Revenue Code of 1954 in significant respects, and included provisions directed toward "private foundations" as defined in Internal Revenue Code section 509 (26 U.S.C. § 509; added by Pub. L. 91-172, tit. 1, § 101(a), Dec. 30, 1969, 83 Stat. 496). It was the intention of Congress to compel "private foundations" (which arguably includes the trust herein involved) to bestow current rather than delayed benefit to charity, to distribute income (and corpus under certain circumstances) rather than to accumulate it. This objective was to be met by requiring "private foundations" to distribute a certain amount of income  or a certain percentage of assets (corpus)  to beneficiaries on an annual basis or be subject to an annual tax of 100 percent of distributable income. Congress also intended to discourage "private foundations" from investing in property that was, by short-term standards, nonproductive. (Report of Committee on Ways and Means, House of Representatives, HR 13270, 91st Congress, 1st Sess.)
The taxation plan was set forth in Internal Revenue Code section 4942, as modified by section 101(l)(3) of the Tax Reform Act.[2] To avoid the section 4942 tax, the plan requires a private foundation to distribute, in dollar amount, its adjusted net income on an annual basis. Basically, "adjusted net income" refers to the amount of taxable income the *974 foundation would have if it were an ordinary corporation subject to income taxation, with some distinctions. To eliminate the possibility that some private foundations might seek to evade distribution by investment in assets with low investment yields, thereby reducing adjusted net income on an annual basis, Internal Revenue Code section 4942 (e) created the concept of "minimum investment return," a specified percentage of a private foundation's assets, and required that the foundation distribute whichever amount  "adjusted net income" or "minimum investment return"  is larger on an annual basis. The procedure contemplated that if the adjusted net income were smaller than the minimum investment return (the percentage of assets constituting this figure to be determined from time to time by the Secretary of the Treasury), the foundation would be required to distribute the difference from corpus.
Congress also expressed its intention to exempt certain "private foundations" from the distribute-income-or-pay-a-tax plan of section 4942  primarily those foundations which had been formed prior to the Tax Reform Act of 1969 and which contained accumulation provisions requiring retention of income and principal. Exemption provisions are found, in part, in section 508 (e), added to the Internal Revenue Code of 1954 by the Tax Reform Act of 1969.[3]
Exemption of certain pre-1970 private foundations from the distribute-income-or-pay-a-tax plan is also dealt with by section 101(l)(3) of the Tax Reform Act of 1969.[4] With reference to organizations (including private foundations) organized before May 27, 1969, section 101(l)(3)(B) *975 provides, in part, that section 4942 of the Internal Revenue Code shall "not apply to an organization to the extent its income is required to be accumulated pursuant to the mandatory terms (as in effect on May 26, 1969, and at all times thereafter) of an instrument executed before May 27, 1969....", and section 101(l)(3)(E) provides that section 4942 shall "not apply to an organization which is prohibited by its governing instrument or other instrument from distributing capital or corpus to the extent the requirements of section 4942 are inconsistent with such prohibition."
Following subdivision (E), section 101(l)(3) states that "[w]ith respect to taxable years beginning after December 31, 1971, subparagraphs (B) and (E) shall apply only during the pendency of any judicial proceeding by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument (as in effect on May 26, 1969) in order to comply with the provisions of section 4942, and in the case of subparagraph (B) for all periods after the termination of such judicial proceeding during which the governing instrument or any other instrument does not permit compliance with such provisions."
On August 24, 1971, the California Legislature enacted Civil Code section 2271 (added by Stats. 1971, ch. 717, §§ 1, 2 and 3), without any expression of legislative intent which we have been able to discover. It provides in part: "The trustee or trustees of every trust (whenever created), during any period or periods such trust is deemed to be a `private foundation' as defined in Section 509 of the Internal Revenue Code of 1954, as added by Section 101 of the Tax Reform Act of 1969 (all references in this article to the Internal Revenue Code shall refer to such code as amended by such act), or a `charitable trust' as defined in paragraph (1) of subsection (a) of Section 4947 of such code, shall distribute its income for each taxable year (and principal if necessary) at such time and in such manner as not to subject the assets of such trust to tax under Section 4942 of such code (as modified by paragraph (3) of subsection (l) of Section 101 of the Tax Reform Act of 1969).... [¶] The provisions of this section shall be deemed to be contained in the instrument or instruments creating every trust to which this section applies, and any provision of such instrument or instruments inconsistent therewith or to the contrary thereof shall be without effect." (Fns. omitted.)
*976 On November 1, 1971, Ralph Kohlmeier, the trustee of the Bella Mabury Trust, filed a petition for instructions in the probate court, seeking reformation of the Mabury Trust instrument in order to distribute trust income in a manner which would avoid the tax imposed by Internal Revenue Code section 4942. The resultant order, filed December 9, 1971, was entitled "Order Denying Petition To Change Terms of Trust."
The trial court found, as a part of its order, that there had at that time been no publication of The Book by the Church, and that the three persons specified in the trust instrument were still living. The trial court also found that "the governing instruments of the trust ... are final and irrevocable in all respects; that said orders are the governing instruments of the trust and as such contain mandatory provisions which require the trustee to accumulate the income of the trust estate until the date of termination of the trust; that said orders cannot be modified or changed to permit the income of the trust estate or the principal of the trust estate to be distributed to any person or party at any time before termination of the trust...." The order concluded "that the trustee cannot be excused from compliance with said orders and decrees as the governing instruments of said trust."
Thereafter, Regulation section 53.4942(a)-2(e) was issued by the Treasury Department as an interpretation of Internal Revenue Code section 4942 and of subsections (B) and (E) of section 101(l)(3) of the Tax Reform Act of 1969. It reiterates that the section 4942 tax is not applicable to organizations formed before the Tax Reform Act of 1969 pursuant to instruments which forbid distribution of income (Treas. Reg. § 53.4942(a)-2(e)(1)(i)), or corpus (Treas. Reg. § 53.4942(a)-2(e)(1)(ii), or both.
However, in subsection (3) of Treasury Regulation section 53.4942(a)-2(e), the following language appears: "With respect to taxable years beginning after December 31, 1971, subparagraph (1) (i) and (ii) [nonapplicability of section 4942 as set forth, infra] of this paragraph shall apply only for taxable years during which there is pending any judicial proceeding by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument (as in effect on May 26, 1969) in order to comply with the provisions of section 4942, and, in the case of subparagraph (1) (i) of this paragraph [pre-May 27, 1969 organizations with instruments forbidding distribution of income], for all taxable years *977 following the taxable year in which such judicial proceeding is terminated during which the governing instrument or any other instrument does not permit compliance with such provisions. Thus, the exception described in subparagraph (1) (ii) of this paragraph [pre-May 27, 1969 organizations with instruments forbidding distribution of corpus], applies after 1971 only for taxable years during which such judicial proceeding is pending...."
Treasury Regulation section 53.4942(a)-2(e)(3) then goes on to interpret the distribute-income-or-pay-a-tax-plan law relative to exempt private foundations (i.e., those formed prior to May 26, 1969, which are governed by instruments forbidding the distribution of income and principal) by drawing a distinction between the accumulation of income and the accumulation of principal. It interprets congressional intent to exempt or exonerate, from the section 4942 distribute-income-or-pay-a-tax plan, those foundations required to accumulate income during years when judicial proceedings to reform the instrument governing the trust are in progress, and, also, during years after such proceedings are terminated and reformation has not been achieved, but to exempt those foundations required to maintain corpus  only for the years judicial proceedings are pending to reform the trust instrument.
Thus, the regulation stated that, in post-judicial proceeding years, an exempt private foundation in which corpus is made nondistributable by its governing instrument, shall be required to make distribution or else be subject to the section 4942 tax, except to the extent that such foundation is also required by its governing instrument to accumulate income. For such latter foundation, the distributable amount is to be reduced by the amount of the income required to be accumulated. However, if such foundation's adjusted net income for any taxable year equals or exceeds its minimum investment return for that year, the income accumulation provisions will be given full effect and no tax will be applicable for failure to distribute. But if such foundation's minimum investment return exceeds its adjusted net income for any taxable year, the foundation will be required to distribute the difference (from corpus) for that year in order to be free of the section 4942 tax.
Treating a pre-May 27, 1969, private foundation whose governing instrument required nondistribution of corpus differently than one whose governing instrument required accumulation of income is apparently based upon the Treasury Department's administrative interpretation of the statute  section 101(l)(3) of the Tax Reform Act of 1969  in *978 mentioning, for post-judicial-proceeding years, the exoneration from the section 4942 tax provided by subdivision (B) for the foundation in which the trust instrument mandated accumulation of income, but not mentioning subdivision (E) that provides exoneration from the section 4942 tax for the foundation in which the trust instrument mandated nondistribution of corpus.
On August 15, 1974, following the issuance of Treasury Regulation section 53.4942(a)-2(e), Ralph Kohlmeier, the trustee of the Bella Mabury trust, again petitioned the probate court for instructions concerning the section 4942 tax problem. He apprised the court that the Church had not yet published The Book; that two of the three persons specified in the trust instrument were still living; that the trust estate contained assets of approximately $10 million; and that the only taxes that had been paid by the trust since its inception were the annual excise taxes levied on its annual investment income pursuant to Internal Revenue Code section 4940.
The trustee asserted that the Bella Mabury Trust was a private foundation as defined in section 509 of the Internal Revenue Code. As such, the trustee advised the court, it was subject to the provisions of section 4942 as interpreted by the Treasury regulation discussed above, with the following result: the trust's "minimum investment return" for the taxable year ending September 30, 1973, was approximately $425,000, while its "adjusted net income" was approximately $175,000; therefore, it was incumbent on the trust to distribute from corpus the sum of approximately $250,000 (the difference), prior to October 1, 1974, or be subject to the section 4942 tax.
It is to be noted that the section 4942 tax is levied in two installments: the first, of 15 percent, is levied on that amount which should be, but has not been distributed at the end of the year following that during which it was received; a corrective period follows, of 90 days after the mailing of a notice of deficiency, during which distributable income must be distributed or the second installment of the tax, 100 percent of distributable income or corpus which remains undistributed, becomes due and payable.
The trustee asked the probate court to order distribution, asserting that such distribution was mandatory to comply not only with Internal Revenue Code section 4942, but with Civil Code section 2271 (set forth, *979 ante). The trustee asked the court to determine to whom and in what amounts the distribution should be made.
Each of the alternative beneficiaries, the Church, Museum and Stanford, responded to the petition for instructions. The Attorney General also filed a response. Two hearings were held in this matter. No evidence was presented at either hearing, but oral argument was presented by the various interested parties in support of the moving papers, answers and responses.
The trial court found that the trust would be subject to the imposition of the section 4942 tax unless it made, prior to September 30, 1974, a "qualifying distribution" as defined in section 4942(g) of the Internal Revenue Code of 1954, as amended. It ordered the trustee to distribute, from trust corpus, not later than September 30, 1974, in equal shares to the Church, Museum and Stanford, an amount sufficient to avoid imposition of the section 4942 tax. It declined to give the trustee "at this time ... any instructions ... with regard to commencement or prosecution of any litigation to determine the propriety of the federal income tax pursuant to Section 4942 of the Internal Revenue Code of 1954, as amended."
The Church has appealed. Museum has cross-appealed from that portion of the order which directed a one-third distribution to the Church. Museum, Stanford and the Attorney General assert that the trial court should not have included the Church in the distribution, but should have ordered the distribution shared only by Museum and Stanford.
The Church contends that it may reasonably be argued that the Mabury trust is not governed by the section 4942 tax on private foundations as defined in Internal Revenue Code section 509 because the trust comes within the exception of section 509(a)(3) as an organization operated exclusively for the benefit of a public-charity organization, of which the Church is one. But the Church's main contention with respect to the inapplicability of Internal Revenue Code section 4942 to the Mabury trust revolves around the interpretation of section 101(l)(3) of the Tax Reform Act of 1969, and especially the effect of subsection (B) thereof. It is the position of the Church that, the exemption from the section 4942 tax provided for income-accumulation trusts in post-judicial-proceeding years carries with it exemption for nondistribution-of-corpus provisions contained in the trust instruments, contrary to the *980 Treasury's interpretation of Tax Reform Act section 101(l)(3) as contained in Treasury Regulation section 53.4942(a)-2(e).
The Church asserts, therefore, that the probate court lacked jurisdiction to accept, as a definitive matter, the trustee's unilateral determination that the section 4942 tax would be due if distribution was not made; that the probate court lacked jurisdiction to draw its own conclusions, as a definitive matter, that this was the fact; and that the probate court could not, competently and definitively, interpret and apply the federal tax law because such was the exclusive function of a federal tax tribunal. The position of the Church is simply that, since a definitive determination of a federal tax liability can only be made by a federal tribunal, with the United States  the taxing authority  and the taxpayer as parties, the probate court should have ordered the trustee to litigate with the United States the propriety of the section 4942 tax.
The Church suggests as litigation alternatives for the trustee that he either withhold from distribution a small amount of distributable corpus, such as one thousand dollars, and litigate the application of section 4942, or, pay the tax and seek refund from the federal government. The Church states that it will not seek to surcharge the trustee on the tax-testing amount if the trustee is unsuccessful in a tax litigation effort, and further states that it will willingly refund any funds distributed to it should the trust terminate without publication of The Book.
The position of Museum and Stanford is that the trial court had jurisdiction to interpret and apply the federal statutes involved, and properly determined that the section 4942 tax was applicable to the Mabury trust. Furthermore, Museum and Stanford assert that there is no reasonable ground for contesting the applicability of Internal Revenue Code section 4942 and, hence, there would have been no reasonable basis for the trial court to order the trustee to litigate the question of whether the trust was subject to the distribute-income-or-pay-a-tax plan set forth in the federal statutes and regulations. In essence, the position of Museum and Stanford is that the section 4942 tax is so clearly applicable to the Mabury trust that it would have been an expensive and idle act for the probate court to have ordered the trustee to litigate a losing cause in the federal courts.
Without question, the trustee of the Mabury trust acted properly in seeking guidance from the probate court. Probate Code section 1120 provides for probate jurisdiction on a continuing basis over all disputes *981 arising from the management of a testamentary trust. Further, this section expressly states that "[t]he trustee may also petition such court, from time to time, for ... authority to exercise the powers authorized by Section 1120.2 of this code."
(1a) It is abundantly clear that there is ample statutory authority that empowers the probate court to consider the problem faced by a trustee who is weighing the implications of a federal tax statute in terms of the management of the trust in his keeping.
Section 1120.2 of the Probate Code deals with the discretion of the probate court to confer upon the trustee of a testamentary trust, at his request, enumerated powers not expressly granted him in the trust instrument. As was stated in Estate of Gilliland: "[B]ut the amendment [section 1120.2] particularly concerns procedures available to testamentary trustees when faced with a problem not expressly dealt with in a trust instrument." (Estate of Gilliland (1974) 44 Cal. App.3d 32, 39 [118 Cal. Rptr. 447].) Subdivision (18) of Probate Code section 1120.2 confers upon the court discretion to allow a trustee "[t]o exercise [in addition to previous enumerated powers] any other power or powers which to the court appear necessary or desirable."
In addition to these Probate Code sections, the Legislature has specifically provided in Civil Code section 2271.2, subdivision (a) that "[t]he superior court shall have jurisdiction to hear and determine any proceedings contemplated by paragraph (3) of subsection (l) of Section 101 of the Tax Reform Act of 1969. Such proceedings may be brought by the organization involved. All specifically named beneficiaries of such organization and the Attorney General shall be parties to such proceedings. This provision shall not be exclusive, and is not intended to limit any jurisdiction which otherwise exists."[5] (Fns. omitted.)
(2) It is well established that, in the absence of exclusive jurisdiction being vested in the federal courts, state courts have concurrent jurisdiction to construe and apply federal statutes. (Claflin v. Houseman (1876) 93 U.S. 130 [23 L.Ed. 833]; Shareholders Management Company v. Gregory (9th Cir.1971) 449 F.2d 326.) No federal statutory or judicial authority has been called to our attention that confers exclusive *982 jurisdiction in the federal courts to interpret federal tax statutes. (3) Although a state court may interpret federal tax statutes in order to resolve a dispute between private parties, it lacks jurisdiction to make an interpretation of such statutes that would be binding on the federal taxing authority.
(1b) As indicated previously herein, the state probate court does have jurisdiction to resolve disputes between the trustee and beneficiaries of a trust, including, in the instant case, a dispute with respect to the appropriate procedure for securing a determination of whether the Mabury trust is subject to the section 4942 tax.
The question before us, therefore, is whether, under the circumstances presented in the case at bench, it was a reasonable exercise of discretion for the trial court to determine that the Mabury trust was subject to the section 4942 tax for the taxable year ending September 30, 1973, unless distribution of corpus was made prior to the expiration of the following taxable year  September 30, 1974, and, hence, to foreclose litigation in a federal forum that would secure a conclusive determination of the tax issue by the only court able to make a conclusive determination.
By deciding that the issue should not be litigated and that the section 4942 tax was applicable, the probate court below made, in effect, a conclusive determination of the issue, since the federal taxing authority would have no reason or occasion to contest a state court decision made in its favor.
Our research has not disclosed, in California or elsewhere, disposition of the issue raised herein by the Church: what is required of the trustee of a testamentary trust when it is asserted by one charitable beneficiary, who has much to lose by annual income or corpus distribution to alternate charitable beneficiaries, that such distribution is not required by federal law? Although Treasury Regulation section 53.4942(a)-2(e) interprets section 101(l)(3) of the Tax Reform Act of 1969 in a way that would not exempt the Mabury trust from the income and corpus distribution requirements under the circumstances presented here, the Church points out that administrative interpretations of statutes are not binding on courts.
But although not binding, Museum and Stanford contend that Treasury Regulations should be upheld unless they are unreasonable. (4) "[I]t is fundamental, of course, that as `contemporaneous *983 constructions by those charged with administration of' the Code [Internal Revenue Code], the Regulations `must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and `should not be overruled except for weighty reasons.' [Citation.]" (Bingler v. Johnson (1969) 394 U.S. 741, 749-750 [22 L.Ed.2d 695, 703-704, 89 S.Ct. 1439].) (See United States v. Correll (1967) 389 U.S. 299 [19 L.Ed.2d 537, 88 S.Ct. 445].)
Cases in other jurisdictions have not considered the problem as it has been presented to us here. We note that courts of other states dealing with the impact of Internal Revenue Code section 4942 have assumed jurisdiction and have interpreted the federal statutes and regulations, but generally without discussion of this issue. (See, e.g., MacCurdy-Salisbury Educational Fund v. Killian (1973) 30 Conn. Supp. 203 [309 A.2d 11]; Davison v. Duke University (1973) 282 N.C. 676 [194 S.E.2d 761, 57 A.L.R.3d 1008]; In re Estate of Barkey (1971) 65 Misc.2d 738 [318 N.Y.S.2d 843]; In re Estate of Klosk (1971) 65 Misc.2d 1005 [319 N.Y.S.2d 685]; In re Estate of Presley (1973) 76 Misc.2d 462 [351 N.Y.S.2d 305].)
In MacCurdy-Salisbury, the Connecticut court expressed the opinion that there would be probate court jurisdiction in their court whether an empowering state statute had been enacted or not. The Connecticut court was dealing with a situation in which the trustees had been notified by federal authority that the trust was a "private foundation" as defined in the Internal Revenue Code. The trustees sought reformation of the instrument, and obtained it. But in none of these cases was it suggested that the exemption clause relating to pre-May 27, 1969, trusts applied or had been improperly interpreted by the Treasury Regulation.
Although there is no federal principle of law that makes it mandatory for a state court to interpret federal taxation statutes in a dispute solely between private parties, Museum, Stanford and the California Attorney General read Civil Code sections 2271 and 2271.2 as requiring the trial court in the case at bench to interpret the federal statutes involved as making the section 4942 tax applicable to the Mabury trust and, under the trust principles of "deviation" and "cy pres," to order a distribution of trust income and corpus to avoid, at all costs, imposition of the section 4942 tax.
(5) But we do not interpret Civil Code sections 2271 and 2271.2 as making it mandatory for our state courts to interpret the Tax Reform Act *984 of 1969 under the circumstances presented in the case at bench. We take the view that, under the circumstances presented in the case at bench, it was an abuse of discretion for the probate court to have made an interpretation of the federal legislation in question. Nor do we consider it appropriate for us to determine whether the section 4942 federal tax is applicable to the Mabury trust. We hold, instead, that a definitive interpretation of the federal legislation and a definitive determination of whether the section 4942 tax is applicable to the Mabury trust are the appropriate requirements under the circumstances presented in the case at bench, and that only a federal judicial tribunal has the power to make such a definitive interpretation and determination.
In view of the contentions of Museum, Stanford and the Attorney General, we turn to an analysis of the trust doctrines of "cy pres" and "deviation."
The cy pres doctrine has been stated as follows: "`If a trust for charity ... becomes ... impossible or impracticable of fulfillment ..., and if the settlor, or testator, manifested a general intention to devote the property to charity, [a court of equity] may, on application of any trustee, or any interested party or the attorney general of the state, order an administration of the trust, devise or bequest as nearly as possible to fulfill the general charitable intention of the settlor or testator.'" (4 Scott (3d ed. 1967) Trusts, § 399, quoting the Model Act Concerning the Administration of Charitable Trusts, Devises and Bequests.) (Italics added.)
In Estate of Black (1962) 211 Cal. App.2d 75, 91 [27 Cal. Rptr. 418], the court points out that "[a] generalized charitable purpose must be demonstrated in order to apply cy pres." (Italics in original.) Estate of Black also points out that the facts in a particular case may indicate that the trust creator had one specific charitable intent and no other, "thus negating a general charitable intent" and precluding exercise of the equitable doctrine of cy pres.
California decisional law tends to define the "deviation" power of the court in connection with trusts as a doctrine applicable primarily to private trusts. "The power to permit deviation from the terms of private trusts is analogous to the cy-pres doctrine applicable to charitable trusts." (Stanton v. Wells Fargo Bank etc. Co. (1957) 150 Cal. App.2d 763, 770 [310 P.2d 1010].) (Italics in original.) In exercising the "deviation" power, "[t]he equity court is simply doing what the testator, presumably, would have done had he anticipated the changed conditions. In other words, *985 the specific intent of the testator is disregarded in order to enforce his general intent." (Stanton, supra, 150 Cal. App.2d 763 at p. 770.) (Italics added.)
In the case at bench, did the creator of the Mabury trust, in addition to having a specific charitable purpose or purposes, have a general charitable purpose which permits of the application of the cy pres and deviation trust doctrines? We do not find it necessary to answer this question. It is to be noted that an essential ingredient of the application of the deviation and cy pres doctrines is the requirement that the specific charitable purpose of the trust creator has become either impossible or impractical of fulfillment. The record in the instant case does not establish that the specific charitable purposes of the creator of the Mabury trust have become either impossible or impractical of fulfillment. (6) We interpret these trust doctrines as requiring a permanency of the impossibility or impracticality of carrying out the specific charitable purpose or purposes of the creator of a trust. No such finding of permanency can be made in the case at bench.
A careful study of the Mabury trust instrument leads to the conclusion that the creator of this trust had three very specific charitable purposes: First and foremost was the specific purpose that the Church should publish The Book and become entitled to the corpus and accumulated income of the entire trust estate. Another specific purpose was that none of the three alternate beneficiaries should receive any portion of the income or corpus of the trust pending either publication of The Book by the Church, or, expiration of the period of three lives in being plus 21 years, whichever event should first occur. The third specific purpose indicated was that Stanford and Museum should receive no portion of the trust estate, but the entire trust estate  corpus and accumulated income  but only if the three-lives-in-being-plus-21-years time period should expire without publication of The Book by the Church.
That the creator of the Mabury trust established the trust with these three specific charitable purposes in mind, including a fixed and rigid intention not to permit any of the three alternative beneficiaries to benefit at all from the trust without the happening of one of the contingencies specified, is indicated clearly from the express provisions of the governing instrument that precluded the beneficiaries from agreeing among themselves to terminate the trust, and that precluded any beneficiary from relinquishing its claim. Hence, a renunciation by the Church of its claim to the trust assets by announcing that it would *986 not, under any circumstances, publish The Book, could not terminate the trust to permit Museum and Stanford to obtain any portion of the trust assets, income or corpus.
It is obvious that the creator of the Mabury trust envisioned that the Church officers, in office at a given time, might indicate a desire not to publish The Book, but that subsequent officers might have a different attitude. Hence, the trust creator provided that any nonpublication decision by the Church would be deemed invalid and rescindable during the trust period of three lives in being plus 21 years.
The question before us involves the applicability of the federal distribute-income-or-pay-a-tax plan to the Mabury trust for one taxable year only  1973. We conclude that only if, and when, there is a definitive ruling from a federal court that the Mabury trust is subject to the tax imposed by section 4942 of the Internal Revenue Code for the fiscal year involved, can it be concluded that the trust creator's specific charitable purposes become impractical or impossible of realization.
Only at such time do the trust doctrines of "cy pres" and "deviation" and the mandate of Civil Code section 2271 become applicable to the Mabury trust involved in the case at bench. When and if such event takes place, a determination may then be made of whether the creator of the trust had a general charitable purpose, in addition to her specific charitable purposes, to permit, under the trust principles of "cy pres" and "deviation," court authorization of a charitable distribution of income or corpus contrary to her specific charitable purposes, in order to avoid imposition of the tax imposed by Internal Revenue Code section 4942.
We are fully cognizant that, in the event tax litigation in a federal forum results in a definitive ruling that the Mabury trust is subject to the section 4942 tax, some portion of the total trust funds may be diverted to the federal government as taxes for a public but noncharitable purpose for the single year involved. But this possibility does not produce a result that is contrary to sound principles of trust law. We are convinced that the creator of the Mabury trust would prefer such a result in an effort to secure a definitive determination of whether her specific charitable purposes are capable of being accomplished in spite of the Tax Reform Act of 1969.
The appeal is dismissed insofar as it was taken from the denial of the motion to vacate. The order (judgment) appealed and cross-appealed *987 from is reversed with instructions that the trial court order the trustee to take such steps as he, in his discretion, deems necessary (including a payment of all or a portion of the tax), to obtain a definitive ruling from an appropriate federal court with respect to whether the Mabury trust is subject to the tax imposed by Internal Revenue Code section 4942 for the fiscal year ending September 30, 1973.
Each party is to bear its own costs on appeal.
Files, P.J., and Kingsley, J., concurred.
The petitions of respondent Kohlmeier and appellant Museum Associates for a hearing by the Supreme Court were denied March 31, 1976. Wright, C.J., Mosk, J., and Clark, J., were of the opinion that the petitions should be granted.
NOTES
[1] The appeal is taken from the order instructing the trustee to distribute income and also purportedly from the denial of a motion to vacate the order. The record discloses that the motion to vacate was made and denied prior to the entry of judgment of the order it sought to vacate. Thus, the denial of the motion was not a special order after judgment, and to that extent the appeal is dismissed: the order itself was appealable (Code Civ. Proc., § 904.1, subd. (k); Prob. Code, § 1240) and remains here for review.
[2] The "(l)" in the section number is a small letter, "L," and not the figure "one."
[3] Section 508 (e) provides:

"(1) General Rule.  A private foundation shall not be exempt from taxation under section 501(a) unless its governing instrument includes provisions the effects of which are 
"(A) to require its income from each taxable year to be distributed at such time and in such manner as not to subject the foundation to tax under section 4942, and ...
"(2) Special Rules For Existing Foundations.  In the case of any organization organized before January 1, 1970, paragraph (1) shall not apply 
"(A) to any taxable year beginning before January 1, 1972.
"(B) to any period after December 31, 1971, during the pendency of any judicial proceeding begun before January 1, 1972, by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to meet the requirements of paragraph (1), and
"(C) to any period after the termination of any judicial proceeding described in subparagraph (B) during which its governing instrument or any other instrument does not permit it to meet the requirements of paragraph (1)."
[4] This section is uncodified. See Public Law 91-172, December 30, 1969, 83 Stat. 534.
[5] Our research indicates that at least 48 states have passed legislation in various forms to encourage private foundations to distribute income (or corpus) and avoid Internal Revenue Code section 4942 taxation. See 34 Am.Jur.2d (1976) Federal Taxation, section 8036, page 707.