*Decision will be entered for the petitioner.*

TRUST UNDER THE WILL OF BELLA MABURY, DECEASED, WALTER R. HILKER, JR., TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6119–80, 6120–80.      Filed April 21, 1983.

*Mark Townsend*, for the petitioner.
*Dennis Brager*, for the respondent.

OPINION

IRWIN, *Judge*: By notices of deficiency, dated January 29, 1980, respondent determined the following excise tax deficiencies:

| Docket No. | Year ending Sept. 30— | First-tier tax sec. 4942(a)[1] | Second-tier tax sec. 4942(b) |
|---|---|---|---|
| 6119–80 | 1975 | $55,280 | $368,535 |
| | 1976 | 55,280 | |
| | 1977 | 55,280 | |
| | 1978 | 55,280 | |
| | 1979 | 55,280 | |
| 6120–80 | 1976 | 64,851 | 432,340 |
| | 1977 | 64,851 | |
| | 1978 | 64,851 | |
| | 1979 | 64,851 | |

The issues for decision are: (1) Whether the Mabury Trust had "undistributed income" for its taxable year ended September 30, 1974, and is liable for an initial excise tax imposed in the amount of 15 percent of such "undistributed income," for each of its taxable years ended September 30, 1975, through September 30, 1979, under section 4942(a); (2) whether the Mabury Trust had "undistributed income" for its taxable year ended September 30, 1975, and is liable for an initial excise tax imposed in the amount of 15 percent of such "undistributed income," for each of its taxable years ended September 30, 1976, through September 30, 1979, under section 4942(a); and (3) whether the Mabury Trust is liable for the 100-percent additional excise tax imposed by section 4942(b) on "undistributed income" of a private foundation for its taxable years ended September 30, 1974, and September 30, 1975.

These cases were fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

The petitioner herein, Walter R. Hilker, Jr., is the trustee of the Mabury Trust created pursuant to the last will of Bella Mabury.

Decedent Bella Mabury (hereinafter decedent) died testate on October 16, 1964. Decedent's will provided for the establishment of a trust, the Mabury Trust. The pertinent terms of such trust provide that, during the existence of the trust, all trust income is to be accumulated and to become principal of the

---

[1]All statutory references are to the Internal Revenue Code of 1954 as amended, unless otherwise indicated.

trust estate. After the death of decedent's sister, Eloise Mabury Knapp, the trust is to terminate whenever the first of the following two events occurs: (1) When the Mother Church, the First Church of Christ, Scientist, in Boston, Mass. (hereinafter the church), and the trustees of the Christian Science Publishing Co. cause to be published a book, written by Bliss Knapp, entitled "The Destiny of the Mother Church" (hereinafter the book) or (2) upon the expiration of 21 years after the death of the survivor of three persons named in decedent's will.

The terms of the trust further provide that, if the trust terminates by reason of the publication of the book, then the assets of the trust estate are to be distributed exclusively to the church. If the trust terminates by reason of the passage of the 21-year period, then the assets of the trust estate are to be distributed in equal shares to Museum Associates (hereinafter the museum) and Leland Stanford, Jr. University (hereinafter the university).

The church, the museum, and the university are included in the Cumulative List of Organizations described in section 170(c) as published by the Internal Revenue Service. The church also is an organization described in section 509(a)(1).

On or about November 1, 1971, Ralph Kohlmeier,[2] as the then trustee of the Mabury Trust, filed a Petition to Change Terms of Trust and for Instructions in the Los Angeles County Superior Court, requesting that the court determine the effect of the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487, and California Civil Code section 2271, which was enacted on August 24, 1971, on the Mabury Trust. On December 9, 1971, the court ruled that the governing instruments of the trust were final and irrevocable in all respects and, as such, contained mandatory provisions requiring the trustee to accumulate income of the trust estate until the date of termination of the trust. The court further ruled that the trustee was prohibited from distributing principal of the trust estate in order to comply with section 4942 or with any other

---

[2]Pars. 5 and 9 of the stipulation of facts submitted by the parties, as well as exhibits attached to the stipulation, indicate that the former trustee's last name is spelled "Kohlmeier." Accordingly, we will hereinafter use that spelling, as opposed to the spelling "Kohlemier" appearing in par. 11 of the stipulation of facts, apparently as the result of a typographical error.

provisions of the Internal Revenue Code, as amended by the Tax Reform Act of 1969.

On August 15, 1974, following the issuance of section 53.4942(a)-2(e), Foundation Excise Tax Regs., Ralph Kohlmeier, as the then trustee of Mabury Trust, again filed a Petition for Instructions as to the applicability of section 4942 to the Mabury Trust. The petition was presented, on September 12, 1974, in Los Angeles County Superior Court. After informing the court of the terms of the Mabury Trust and the court's December 9, 1971, ruling, the petition stated:

[the Mabury Trust] is a charitable trust as defined in * * * [section 4947(a)(1)] and is thereby treated as an organization described in section 501(c)(3) * * * . By reason of such treatment, said trust is a "private foundation" as defined in section 509 * * * and as a private foundation, said trust is required to comply with the provisions of section 4942 * * * as amended by section 101(l)(3) of the Tax Reform Act of 1969 and the regulations promulgated thereunder.

Subsequent to the Court's aforesaid Order Denying Petition to Change Terms of Trust dated December 9, 1971, the Treasury Department issued Regulation section 53.4942(a)-(2)(e)(3) which clarified the application of section 4942 * * * as amended by section 101(l)(3) of the Tax Reform Act. Such Regulation * * * provides in part as follows:

"beginning with the first taxable year following the taxable year in which * * * judicial proceedings (instituted by a private foundation to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to comply with the provisions of Section 4942) (are) terminated, such foundation will be required to meet the requirements of Section 4942 and the regulations thereunder *except to the extent such foundation is required to accumulate income even if the governing instrument continues to prohibit invasion of capital or corpus.* In any case where a foundation's governing instrument or any other instrument requires accumulation of income beginning with the first taxable year following the taxable year in which such judicial proceeding is terminated, the distributable amount (the amount required to be distributed under Section 4942 for such foundation) shall be reduced by the amount of income required to be accumulated. Therefore, if the foundation's adjusted net income for any taxable year equals or exceeds its minimum investment return for such year, the accumulation provision will be given full effect. *However, if the minimum investment return exceeds the adjusted net income for any taxable year, the foundation will be required to distribute such excess for such year.*"

Based upon the above quoted regulation, Petitioner is informed and believes that said trust must distribute the difference between its minimum investment return (as hereinafter defined) and its accumulated net income, if such minimum investment return is greater, for any taxable year subsequent to 1971. * * * Additionally, a private foundation must distribute

the amount required under section 4942 * * * within one year after the close of the taxable year in which such amount is determined or be ultimately subject to at least a 100 percent tax on the amount not so distributed. Petitioner is further informed and believes that said trust's minimum investment return ($425,000) for its taxable year commencing October 1, 1972, was greater than its accumulated net income ($175,000) by an amount of approximately $250,000, and therefore, such amount must be distributed prior to October 1, 1974, in order to avoid imposition of the tax on such amount pursuant to section 4942 * * *

Petitioner is informed and believes and based thereon alleges that in any taxable year subsequent to said trust's taxable year commencing in 1972, whenever said trust's minimum investment return for any such year exceeds its accumulated net income, said trust will be required under section 4942 of the Internal Revenue Code to distribute such excess in order to avoid imposition of the section 4942 tax.

Section 2271 of the California Civil Code, enacted August 24, 1971, and effective that date, provides, in relevant part, that except as modified in paragraph (3) of subsection (1) of section 101 of the Tax Reform Act of 1969, during such periods that any charitable trust is deemed to be a "private foundation", such trusts *shall distribute* such amounts at such time and in such manner as to not subject the trust to tax under section 4942 of the Internal Revenue Code.

Petitioner, therefore, alleges that pursuant to California Civil Code section 2271, said trust is required to distribute approximately $250,000 *from corpus* prior to October 1, 1974, in order to avoid imposition of the section 4942 tax, but Petitioner needs the instruction of the Court as to which entity, if any, such distribution shall be made, since the governing instrument of said trust makes no provision for such distribution.

* * * * * * *

WHEREFORE, Petitioner prays as follows:

1. That the Court instruct the Trustee to whom and in what amount, if any, distributions should be made in order to comply with section 4942 * * * as amended by section 101(1)(3) of the Tax Reform Act of 1969.

2. That the Court make such further Order as is deemed proper.

The court found that the amount by which the trust's "minimum investment return," as defined by section 4942(e), exceeded its "adjusted net income," as defined by section 4942(f), for its fiscal year ended September 30, 1973, would be subject to the excise tax imposed by section 4942 unless such amount was distributed before September 30, 1974. The court ordered the trustee to distribute such amount in equal shares to the three charitable beneficiaries of the trust so as to avoid the tax imposed by section 4942. The church filed a notice of appeal from that order.

On January 28, 1976, the California Court of Appeal reversed the trial court's order and ordered the trustee "to

take such steps as [the trustee], in his discretion, deems necessary (including a payment of all or a portion of the tax), to obtain a definitive ruling from an appropriate federal court with respect to whether the Mabury Trust is subject to the tax imposed by Internal Revenue Code section 4942 for the fiscal year ending September 30, 1973." *Matter of Estate of Mabury*, 54 Cal. App. 3d 969, 987, 127 Cal. Rptr. 233 (Cal. Ct. App. 1976). Petitions for hearing by the California Supreme Court were denied on March 31, 1976.

Pursuant to the instructions of the Court of Appeal set forth above, the Superior Court ordered petitioner, as successor trustee of the Mabury Trust, to do the following:

file an amended Schedule PF to Form 1041, Determination of Liability for Chapter 42 Tax, and * * * file a Form 2720, Return of Initial Taxes on Private Foundations, for the Trust's fiscal year ending September 30, 1975 for the purpose of reflecting the full amount of tax due by reason of the failure of the Trust to make any qualifying distributions during its fiscal year ending September 30, 1975 for undistributed income determined for the year ending September 30, 1973, and * * * pay the full amount of tax shown due thereon.

The Superior Court further ordered petitioner to immediately thereafter "file a Claim for Refund, Form 843, on the basis that the tax paid with the amended Schedule PF and Form 4720 for the year ending September 30, 1975 was not due and request the prompt denial of such Claim for Refund."

On or about January 13, 1976, Ralph Kohlmeier, as the then trustee of the Mabury Trust, filed with respondent a Form 1041 for the Mabury Trust's fiscal year ended September 30, 1975, and Schedule PF to such Form 1041, reflecting that section 4942 was inapplicable to the Mabury Trust for its fiscal years ended September 30, 1973, September 30, 1974, and September 30, 1975. Petitioner, on or about February 16, 1978, filed with respondent (1) an amended Schedule PF to Form 1041 for the Mabury Trust's fiscal year ended September 30, 1975, indicating that as of September 30, 1975, there was undistributed income under section 4942 for the Mabury Trust's fiscal year ended September 30, 1973, in the amount of $159,537, and (2) a Form 4720 reflecting tax in the amount of $23,931 on such undistributed income for the trust's fiscal year ended September 30, 1973. On or about February 16, 1978, petitioner paid respondent $23,931, plus $3,508 representing

interest on the $23,931 from January 15, 1974, through February 16, 1978. On or about February 16, 1978, petitioner submitted to respondent a claim for refund in the amount of $27,439, representing the above-described tax plus interest.

On October 2, 1978, when more than 6 months had elapsed from the date of filing the claim for refund with no action thereon by respondent, petitioner instituted a suit for refund of taxes in U.S. District Court for the Central District of California. The complaint filed in such suit contained substantially the same statement of facts as set forth above respecting the trust's fiscal year ended September 30, 1973. Respondent determined that the statute of limitations for assessment of taxes under section 6501 had expired prior to assessment of the taxes involved in the District Court suit and refunded the $23,931 plus interest. Petitioner and respondent thereafter filed a Stipulation for Dismissal with Prejudice and Order Thereon of the District Court suit and the court entered its order in accordance therewith on April 9, 1980.

The trustee of the Mabury Trust has accumulated all income of the trust and has made no distributions of income or principal to any of the charitable beneficiaries since the date of the trust's creation. The book has neither been published nor caused to be published by the church.

The Mabury Trust is a "charitable trust" as defined by section 4947(a)(1). Its "adjusted net income" as defined by section 4942(f) and its "minimum investment return" as defined by section 4942(e) for its taxable years ended September 30, 1974, and September 30, 1975, are as follows:

| Year ended Sept. 30 | Adjusted net income sec. 4942(f) | Minimum investment return sec. 4942(e) |
|---|---|---|
| 1974 | $413,057 | $317,129 |
| 1975 | 457,476 | 353,907 |

The first issue for decision is whether petitioner is liable for the initial 15-percent excise taxes imposed by section 4942(a).[3]

---

[3]In relevant part, sec. 4942(a) provides:

SEC. 4942. TAXES ON FAILURE TO DISTRIBUTE INCOME.

(a) INITIAL TAX.—There is hereby imposed on the undistributed income of a private foundation for any taxable year, which has not been distributed before the first day of the second (or any succeeding) taxable year following such taxable year (if such first day falls within the taxable period), a tax equal to 15 percent of the amount of such income remaining undistributed at the beginning of such second (or succeeding) taxable year. * * *

The parties primarily dispute whether California Civil Code section 2271 (West Supp. 1981) automatically reformed the governing instrument of the Mabury Trust so as to require the trust to distribute its income (and, if necessary, its principal) in order to avoid imposition of the excise taxes provided by section 4942.

Section 4942 is a part of detailed statutory provisions added to the Code by the Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 487 (hereinafter the Tax Reform Act), which are designed to provide assurance that private foundations will currently bestow benefits upon charities. H. Rept. 91–413 (1969), 1969–3 C.B. 200, 217.

Section 4942 requires, in general, that certain private foundations make a minimum level ("distributable amount") of charitable contributions ("qualifying distributions"). The distributable amount equals the greater of the foundation's "minimum investment return" (as defined by section 4942(e)) or "adjusted net income" (as defined by section 4942(f)), reduced by specified adjustments. If a private foundation fails to currently distribute its distributable amount in the form of qualifying distributions, an initial tax and an additional tax are imposed. The initial tax is imposed in the amount of 15 percent of any part of the distributable amount remaining undistributed at the beginning of the second taxable year (and each succeeding taxable year) following the year for which the distributable amount was calculated. If any portion of the distributable amount remains undistributed at the close of the taxable period, section 4942(b)[4] imposes the additional tax of 100 percent of the amount involved. The taxable period ends on the earliest of the date of mailing of the notice of deficiency or the date on which the initial tax is assessed. Sec. 4942(j)(1).[5]

---

[4]Sec. 4942(b) provides:

(b) ADDITIONAL TAX.—In any case in which an initial tax is imposed under subsection (a) on the undistributed income of a private foundation for any taxable year, if any portion of such income remains undistributed at the close of the taxable period, there is hereby imposed a tax equal to 100 percent of the amount remaining undistributed at such time.

[5]Sec. 4942(j)(1) provides:

(j) OTHER DEFINITIONS.—For purposes of this section—

(1) TAXABLE PERIOD.—The term "taxable period" means, with respect to the undistributed income for any taxable year, the period beginning with the first day of the taxable year and ending on the earlier of—

Section 101(l)(3) of the Tax Reform Act provides transitional rules for the application of section 4942.

With respect to organizations organized before May 27, 1969, section 101(l)(3)(B) of the Tax Reform Act provides, in part, that section 4942 shall not apply to an organization to the extent that it is required to accumulate its income "pursuant to the mandatory terms (as in effect on May 26, 1969, and at all times thereafter) of an instrument executed before May 27, 1969."[6] The exception to the application of section 4942 provided by section 101(l)(3)(B) is applicable, however, for taxable years beginning after December 31, 1971, only during the pendency of any judicial proceeding by a private foundation which is necessary to reform, or to excuse the foundation from compliance with, its governing or other instrument and for all periods following the termination of any such judicial proceeding to the extent that the governing instrument requires that the foundation's income be accumulated. Sec. 101(l)(3) of the Tax Reform Act.

Section 101(l)(3)(E) of the Tax Reform Act provides that section 4942 shall not apply to an organization organized before May 27, 1969, to the extent that the requirements of section 4942 are inconsistent with the organization's governing instrument or other instrument that prohibits the distribution of capital or corpus. The exception to the application of section 4942 provided by section 101(l)(3)(E) of the Tax Reform Act is applicable, however, for taxable years beginning after December 31, 1971, only during the pendency of any judicial proceeding by the private foundation which is necessary to reform, or to excuse the private foundation from compliance with, its governing or other instrument. Sec. 101(l)(3) of the Tax Reform Act.

Section 508(e)(1) provides that a private foundation shall not

---

(A) the date of mailing of a notice of deficiency with respect to the tax imposed by subsection (a) under section 6212, or

(B) the date on which the tax imposed by subsection (a) is assessed.

[6]Sec. 101(l)(3)(B) of the Tax Reform Act further provides, however, that sec. 4942 shall apply to such an organization if the organization would have been denied exemption if former sec. 504(a) had not been repealed by the Tax Reform Act, or the organization would have had its deductions under sec. 642(c) limited if former sec. 681(c) had not been repealed by the Tax Reform Act. Respondent has conceded that the Mabury Trust would neither have been denied exemption under sec. 501(c)(3) if sec. 504(a) had not been repealed nor have had its deductions limited under sec. 642(c) if sec. 681(c) had not been repealed.

be exempt from taxation under section 501(a) unless its governing instrument includes provisions which have the effect, inter alia, of requiring the private foundation to distribute its income for each taxable year at such time and in such manner so as to avoid imposition of the section 4942 excise taxes on the foundation. Section 508(e)(2) contains special rules, which provide private foundations organized prior to January 1, 1970, an opportunity to comply with the requirements of section 508(e)(1), as follows:

(2) SPECIAL RULES FOR EXISTING PRIVATE FOUNDATIONS.—In the case of any organization organized before January 1, 1970, paragraph (1) shall not apply—

(A) to any taxable year beginning before January 1, 1972,

(B) to any period after December 31, 1971, during the pendency of any judicial proceeding begun before January 1, 1972, by the private foundation which is necessary to reform, or to excuse such foundation from compliance with, its governing instrument or any other instrument in order to meet the requirements of paragraph (1), and

(C) to any period after the termination of any judicial proceeding described in subparagraph (B) during which its governing instrument or any other instrument does not permit it to meet the requirements of paragraph (1).

Shortly after the enactment of section 508(e), on May 9, 1970, the Internal Revenue Service issued 26 C.F.R. sec. 13.8, Temporary Income Tax Regs. (1970), which provided that the governing instrument of a private foundation would be considered amended to satisfy the requirements of section 508(e) if valid provisions of State law had been enacted that either (1) required the private foundation to act, or refrain from acting, so as to not become subject to the excise taxes imposed by sections 4942 through 4945 or (2) treated the provisions required by section 508(e)(1) as contained in the governing instrument of the private foundation. The temporary regulation is now part of section 1.508–3(d)(1), Income Tax Regs.

Nearly every State recognized that the institution of judicial proceedings by all private foundations organized before January 1, 1970, to reform their governing instruments would overburden its State courts. As a result, most States enacted

statutes to comply with section 13.8, Temporary Income Tax Regs. (1970).[7] The California legislature enacted such a statute. The California statute, California Civil Code section 2271 (West Supp. 1981), which became effective on August 24, 1971, provides:

Sec. 2271. Distribution of income of "private foundation" or "charitable trust"; unauthorized acts of trustee

The trustee or trustees of every trust (whenever created), during any period or periods such trust is deemed to be a "private foundation" as defined in Section 509 of the Internal Revenue Code of 1954, as added by Section 101 of the Tax Reform Act of 1969 [(] all references in this article to the Internal Revenue Code shall refer to such code as amended by such act), or a "charitable trust" as defined in paragraph (1) of subsection (a) of Section 4947 of such code, shall distribute its income for each taxable year (and principal if necessary) at such time and in such manner as not to subject the assets of such trust to tax under Section 4942 of such code (as modified by paragraph (3) of subsection (1) of Section 101 of the Tax Reform Act of 1969). The trustee or trustees of every such trust shall not engage in any act of self-dealing as defined in subsection (d) of Section 4941 of such code (as modified by paragraph (2) of subsection (1) of Section 101 of the Tax Reform Act of 1969), retain any excess business holdings as defined in subsection (c) of Section 4943 of such code, make any investments in such manner as to subject the assets of said trust to tax under Section 4944 of such code, or make any taxable expenditure as defined in subsection (d) of Section 4945 of such code (as modified by paragraph (5) of subsection (1) of Section 101 of the Tax Reform Act of 1969).

The provisions of this section shall be deemed to be contained in the instrument or instruments creating every trust to which this section applies, and any provision of such instrument or instruments inconsistent therewith or to the contrary thereof shall be without effect.

Petitioner challenges the correctness of respondent's determination that the Mabury Trust is liable for the excise taxes imposed by section 4942. He makes the following alternative arguments in support of his position:

(1) Section 101(1)(3)(B) of the Tax Reform Act relieves the Mabury Trust from liability for the taxes imposed by section 4942 for its taxable years ended September 30, 1974, and September 30, 1975, since each of those taxable years is a period after the termination of judicial proceedings in which the Los Angeles Superior Court refused to change the terms of

---

[7]Rev. Rul. 75–38, 1975–1 C.B. 161; Fremont-Smith, "Impact of the Tax Reform Act of 1969 on State Supervision of Charities," 8 Harv. J. Legis. 537, 540–550 (1971).

the trust's governing instrument requiring accumulation of trust income;

(2) The exception to the application of section 4942 provided by section 101(l)(3)(B) of the Tax Reform Act applies to the Mabury Trust for its taxable years ended September 30, 1974, and September 30, 1975, because during each of such taxable years a judicial proceeding was pending that was necessary to reform, or to excuse the Mabury Trust from compliance with, its governing instrument;

(3) The Mabury Trust is excluded from private foundation status because it is an organization described in section 509(a)(3), as a result of its relationship with the church, which is an organization described in section 509(a)(1); and

(4) The exemption from section 4942 provided for organizations organized prior to May 27, 1969, in post-judicial proceeding years includes exemption for nondistribution of corpus provisions contained in the trust's instrument contrary to a portion of section 53.4942(a)-2(e), Foundation Excise Tax Regs.[8]

Respondent answers these arguments as follows:

(1) It was not necessary for the Mabury Trust to institute judicial proceedings to reform, or to excuse it from compliance with, its governing instrument, since the provisions of California Civil Code section 2271 (West Supp. 1981) had reformed its governing instrument by operation of law to allow it to make such distributions as were necessary to avoid imposition of tax under section 4942. See sec. 101(l)(3) of the Tax Reform Act;

(2) Even if the judicial proceedings commenced by the trustee of the Mabury Trust were necessary, they were not pending at the close of the Mabury Trust's taxable years ended September 30, 1977, September 30, 1978, and September 30, 1979, because the trust did not diligently pursue its judicial remedies after January 28, 1976, the date of the order issued by the California Court of Appeal. Sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs.;

---

[8]Petitioner also asserted, in his petition, that the Mabury Trust is an organization described in sec. 4942(j)(3) and, as such, not subject to the tax imposed by sec. 4942. Petitioner appears, however, to have abandoned that assertion as he makes no argument in his brief to support it. In any event, we note that the Mabury Trust is not an organization described in sec. 4942(j)(3), inasmuch as it did not make qualifying distributions "equal to substantially all of its adjusted net income," as defined in sec. 4942(f). See sec. 4942(j)(3)(A).

(3) The Mabury Trust is not an organization described in section 509(a)(3);

(4) The portion of section 53.4942(a)-2(e), Foundation Excise Tax Regs., that requires the distribution of corpus by organizations organized before May 27, 1969, following the termination of judicial proceedings where the governing instrument continues not to permit compliance with section 4942 is irrelevant in the instant case and, to the extent it may be applicable, is valid.

At the outset, we determine whether the Mabury Trust must be considered a private foundation.

The parties have stipulated that the Mabury Trust is a charitable trust as defined by section 4947(a)(1). Consequently, for purposes of part II of subchapter F of chapter 1 (excluding section 508(a), (b), and (c)) and chapter 42 of the Internal Revenue Code, it is treated as an organization described in section 501(c)(3). Sec. 4947(a)(1). Under section 509(a), an organization described by section 501(c)(3) is a private foundation unless it satisfies the requirements of section 509(a)(1), (2), (3), or (4). As indicated above, petitioner would have us find that the Mabury Trust is an organization described in section 509(a)(3) (hereinafter a supporting organization), because of its relationship to the church, which is an organization described in section 509(a)(1).

Section 509(a) provides in pertinent part:

SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

  *   *   *   *   *   *   *

(3) an organization which—

(A) is *organized,* and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),

(B) is operated, supervised, or controlled by or in connection with one or more organizations, described in paragraph (1) or (2), and

(C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2) * * *

[Emphasis added.]

Respondent insists that the Mabury Trust is not a support-

ing organization because it has not met the conditions of section 509(a)(3)(A) and (B). We agree with respondent that the Mabury Trust was not a supporting organization since it was not "organized * * * exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" the church within the meaning of section 509(a)(3)(A).[9]

Section 1.509(a)-4(c) and (d), Income Tax Regs., sets forth the requirements that the articles of an organization must satisfy to meet the organizational test of section 509(a)(3)(A). Under section 1.509(a)-4(c)(1), Income Tax Regs., an organization is organized exclusively for one or more of the purposes specified in section 509(a)(3)(A) *only* if its articles of organization (1) limit the purposes of such organization to the purposes set forth in section 509(a)(3)(A); (2) specify the organizations described in section 509(a)(1) or (2) (hereinafter publicly supported organizations) on whose behalf the organization is to be operated; and (3) do not expressly empower the organization to operate to support or benefit any organization other than the specified publicly supported organizations. See *Change-All Souls Housing Corp. v. United States*, 229 Ct. Cl. ___, 671 F.2d 463, 471–472 (1982). Furthermore, section 1.509(a)-4(c)(3), Income Tax Regs., provides:

(3) *Limitations.* An organization is not organized exclusively for the purposes set forth in section 509(a)(3)(A) if its articles expressly permit it to operate to support or benefit any organization other than those specified publicly supported organizations referred to in subparagraph (1)(iii) of this paragraph. *Thus, for example, an organization will not meet the organizational test under section 509(a)(3)(A) if its articles expressly empower it to pay over any part of its income to, or perform any service for, any organization other than those publicly supported organizations specified in its articles* (within the meaning of paragraph (d) of this section). *The fact that the actual operations of such organization have been exclusively for the benefit of the specified publicly supported organizations shall not be sufficient to permit it to meet the organizational test.* [Emphasis added.]

The regulations are presumptively valid and must be upheld unless they are determined to be unreasonable and plainly inconsistent with the statute. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). Petitioner does not contest the validity of the regulations. Instead, petitioner

---

[9]For this reason, we do not address respondent's other arguments.

contends that the terms of the Mabury Trust satisfy the conditions set forth in the regulations.

Specifically, petitioner contends that the organizational test described in the regulations is satisfied because the terms of the Mabury Trust designate the church by name, the sole purpose of the Mabury Trust is to accumulate income and retain corpus for the church, and the Mabury Trust has no authority to engage in any activities other than those enumerated for the benefit of the church. In our view, the fully stipulated facts do not support petitioner's argument.

Under the terms of the Mabury Trust, if the church causes the book to be published before the expiration of 21 years after the death of the survivor of three persons named in decedent's will, then the entire trust estate is to be distributed to the church, which is an organization described in section 509(a)(1) (i.e., a publicly supported organization). However, the terms of the trust also provide that if the church fails to cause the book to be published before the expiration of the specified time period, then the assets of the trust estate shall be distributed in equal shares to the museum and the university. No indication that the museum and the university are publicly supported organizations exists in the stipulation of facts on which this case was submitted. Indeed, petitioner makes no assertion that the museum and the university are publicly supported organizations. We, accordingly, must conclude that they are not such organizations. See Rules 142 and 122(b), Tax Court Rules of Practice and Procedure. The fact that the terms of the Mabury Trust *expressly empower* it to benefit organizations other than "specified" publicly supported organizations compels us to conclude that the organizational test was not met. Furthermore, it is immaterial that the Mabury Trust may never actually operate so as to benefit any organization other than the Church. See sec. 1.509(a)-4(c)(3), Income Tax Regs.[10]

Since the trust is not a supporting organization, we must

---

[10]See *Santa Cruz Building Association v. United States*, 411 F.Supp 871, 882–883 (E.D. Mo. 1976), and *Interneighborhood Housing Corp. v. Commissioner*, T.C. Memo. 1982–661, applying analogous regulations (sec. 1.501(c)(3)-1(b), Income Tax Regs.) to conclude that organizations were not organized exclusively for one or more purposes set forth in sec. 501(c)(3), because the articles of the organizations *expressly empowered* the organizations to engage in substantial nonexempt activities.

decide whether, as a private foundation, its governing instrument is automatically deemed, by virtue of California Civil Code section 2271, to contain a provision requiring its trustee to "distribute its income for each taxable year (and principal if necessary) at such time and in such manner as not to subject the assets of the trust to tax under Section 4942." If the trust's governing instrument is automatically deemed to contain such a provision, then neither section 101(l)(3)(B) nor section 101(l)(3)(E) of the Tax Reform Act relieved the trust from making the qualifying distributions necessary to avoid the excise taxes imposed by section 4942. If, however, the trust's governing instrument was not automatically reformed by California Civil Code section 2271, then section 101(l)(3) of the Tax Reform Act exempted the trust from (1) distributing both income and corpus to comply with section 4942 during years when any judicial proceeding by the trust was pending to reform, or excuse it from compliance with, its governing instrument in order to comply with the requirements of section 4942, and (2) distributing income for all periods after any such proceeding had terminated to the extent that the trust's governing instrument still failed to permit compliance with the income distribution requirements of section 4942.

Unfortunately, from our point of view, there is no legislative history or decision of the highest court of the State of California dealing with the question before us. In fact, not even a lower State court has explicitly considered the question. We, accordingly, must determine how we think the highest State court would interpret California Civil Code section 2271 if presented with the question. *Doetsch v. Doetsch*, 312 F.2d 323, 327–328 (7th Cir. 1963); *Boyter v. Commissioner*, 74 T.C. 989, 995 (1980), remanded 668 F.2d 1382 (4th Cir. 1981). See *Gordon v. Commissioner*, 70 T.C. 525, 531 (1978).

The Supreme Court of California has often applied the elementary canon of statutory construction that significance, if possible, should be given to every word, phrase, sentence, or part of an act and that no part should be treated as meaningless or superfluous, unless there is obvious contradiction or error. See, e.g., *Turner v. Board of Trustees, Calexico Unified Sch. D.*, 16 Cal. 3d 818, 548 P.2d 1115 (1976); *Select Base Materials, Inc. v. Board of Equalization*, 51 Cal. 2d 640, 335 P.2d 672 (1959). See also 2A J. Sutherland, Statutory

Construction, sec. 46.06 (4th ed. 1973). We agree with petitioner's argument that application of that rule of construction to California Civil Code section 2271 et seq. leads to the conclusion that the governing instrument of every California trust deemed to be a private foundation is not automatically considered to contain language requiring it to distribute income (and principal if necessary) to comply with section 4942.

To read California Civil Code section 2271 as automatically reforming the governing instrument of every trust deemed to be a private foundation to conform with the requirements of section 4942, is to render superfluous California Civil Code section 2271.2(a) which provides:

> The superior court shall have jurisdiction to hear and determine any proceedings contemplated by paragraph (3) of subsection (1) of Section 101 of the Tax Reform Act of 1969. Such proceedings may be brought by the organization involved. All specifically named beneficiaries of such organization and the Attorney General shall be parties to such proceedings. This provision shall not be exclusive and is not intended to limit any jurisdiction which otherwise exists.

The only proceedings contemplated by paragraph (3) of subsection (1) of section 101 of the Tax Reform Act are proceedings that are necessary to reform, or to excuse a private foundation from compliance with provisions of a governing instrument executed before May 27, 1969, that require accumulation of income and/or prohibit invasion of corpus in order to comply with the provisions of section 4942. Hence, if, as asserted by respondent, provisions requiring distribution of income (and principal if necessary) to avoid the excise taxes imposed by section 4942 are deemed to be included in the governing instrument of each trust deemed to be a private foundation, by virtue of California Civil Code section 2271, any judicial proceedings contemplated by section 101(1)(3) of the Tax Reform Act would be unnecessary and California Civil Code section 2271.2(a) would be superfluous.

California Civil Code section 2271 requires, inter alia, that the trustee or trustees of a "charitable trust," as defined in section 4947(a)(1), such as the Mabury Trust, "distribute its income for each taxable year (and principal if necessary) at such time and in such manner as not to subject the assets of such trust to tax under Section 4942 * * * (*as modified by*

*paragraph (3) of subsection (1) of Section 101 of the Tax Reform Act of 1969).*" (Emphasis added.) As earlier noted, pursuant to the transitional rule of section 101(l)(3)(B) of the Tax Reform Act, if a judicial proceeding to reform, or to excuse a private foundation from compliance with, a governing instrument executed before May 27, 1969, fails to reform, or to result in permission to deviate from, provisions of the governing instrument requiring accumulation of income, then the private foundation's assets are not subject to tax under section 4942 to the extent that income is accumulated in accordance with such provisions of the governing instrument.[11] Respondent's reading of California Civil Code section 2271, as automatically reforming the governing instrument of every trust to which it applies to allow the qualifying distributions necessary to avoid imposition of tax under section 4942, would require distributions to literally comply with section 4942, which, if such a judicial proceeding was instituted, might not be required as a result of this transitional rule of the Tax Reform Act.

In our view, when the language emphasized above is considered together with California Civil Code section 2271.2(a), expressly providing jurisdiction over proceedings contemplated by section 101(l)(3) of the Tax Reform Act, it is clear that respondent's reading of California Civil Code section 2271 is erroneous. A reading of California Civil Code section 2271 et seq. that does not render California Civil Code section 2271.2(a) superfluous and permits a private foundation to take advantage of the exception to section 4942 provided by section 101(l)(3) of the Tax Reform Act for post-judicial proceeding years is the following one:

(1) California Civil Code section 2271.2(a) permits a trust deemed to be a private foundation whose governing instrument was executed before May 27, 1969, and requires income to be accumulated to institute a judicial proceeding to reform, or to excuse such trust from compliance with, the provisions of

---

[11]See *In re Estate of Finley*, 60 Pa. D. & C.2d 38 (Allegheny County Orphans' Ct. 1972, 30 AFTR 2d 72–5539, 72–2 USTC par. 9727), in which the court noted that its determination not to reform, or permit deviation from, provisions of a testamentary trust directing the trustee to accumulate one-fourth of the annual income until the trust principal amounts to $3 million would "not be detrimental taxwise to" the trust.

its governing instrument requiring the accumulation of income in order to comply with the provisions of section 4942.

(2) If any such trust institutes any such proceeding that terminates and fails to permit compliance with the provisions of section 4942, then with respect to taxable years beginning after December 31, 1971, the assets of such trust are not subject to tax under section 4942 (as modified by paragraph (3) of subsection (l) of section 101 of the Tax Reform Act) to the extent that its income is still required to be accumulated. Sec. 101(l)(3) of the Tax Reform Act. See sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs.

(3) Therefore, to the extent that income is still required to be accumulated following the termination of a proceeding commenced under authority of California Civil Code section 2271.2(a), California Civil Code section 2271 does not require the trust to distribute its income.

In support of his contention that California Civil Code section 2271 automatically reformed the Mabury Trust's governing instrument to comply with the provisions of section 4942 and thereby rendered any judicial proceeding brought by the trust superfluous, respondent relies on the following uncodified portion of the act which added section 2271 to the California Civil Code:

> The Federal Tax Reform Act of 1969 (P.L. 91–172) and regulations issued thereunder require that all private foundations cause certain amendments to be made to their governing instruments no later than December 31, 1971, in order to retain their tax-exempt status unless a state statute accomplishes the same result. *This act will eliminate the need for judicial action in most such cases.* Its immediate operation is necessary to avoid an intolerable burden on the courts caused by foundations seeking to comply with the provisions of the Tax Reform Act. [1971 Cal. Stat. ch. 717, sec. 4, at 1445; emphasis supplied by respondent.]

Unquestionably, the principal goal of the legislation was to prevent the California courts from being overburdened by private foundations seeking to amend their governing instruments. Nevertheless, we cannot conclude from the portion of the act quoted above that California Civil Code section 2271 automatically amends the governing instrument of every trust deemed to be a private foundation to require compliance with the distribution requirements of section 4942.

As previously indicated, section 508(e)(1) provides that a private foundation cannot retain its tax-exempt status under

section 501(a) unless its governing instrument requires its income to be distributed at such time and in such manner as to avoid the taxes imposed by section 4942. Section 508(e)(1), in addition, provides that a private foundation cannot retain its tax-exempt status under section 501(a) unless its governing instrument includes provisions prohibiting the foundation from engaging in any act of self-dealing (as defined in section 4941(d)), retaining any excess business holdings (as defined in section 4943(c)), making any investment which jeopardizes its charitable purposes, and making any taxable expenditures (as defined in section 4945(d)). By virtue of California Civil Code section 2271, the governing instruments of all California trusts deemed to be private foundations are deemed to contain these prohibitory provisions. See Cal. Civ. Code sec. 2271, *supra* at 16–17. Hence, California Civil Code section 2271 eliminated the need for *most* judicial proceedings to reform the governing instruments of California trusts deemed to be private foundations that otherwise would have been required for such trusts to retain their tax-exempt status.

In accordance with the foregoing, we conclude that California Civil Code section 2271 did not automatically reform the Mabury Trust's governing instrument to comply with the provisions of section 4942, and thus, resort to a judicial proceeding was necessary. Hence, if either during the years in issue a judicial proceeding was pending to reform, or to excuse the Mabury Trust from compliance with, the provisions of its governing instrument contrary to the provisions of section 4942, or before the years in issue such a judicial proceeding had terminated and failed to reform, or excuse it from complying with, the provisions of its governing instrument requiring accumulation of income, then to the extent that income was required to be accumulated, the requirements of section 4942 (and the taxes imposed by section 4942) are inapplicable. Sec. 101(l)(3) of the Tax Reform Act; sec. 53.4942(a)-2(e), Foundation Excise Tax Regs.

Petitioner contends that a judicial proceeding to reform, or to excuse compliance with, the terms of the Mabury Trust terminated on December 9, 1971, when the Los Angeles Superior Court entered its order denying a request to change the terms of the Mabury Trust. In the alternative, petitioner contends that as a result of the pendency of judicial proceed-

ings, instituted on August 15, 1974, section 4942 is inapplicable to the Mabury Trust in its fiscal years ended September 30, 1974, and September 30, 1975. Respondent, addressing petitioner's second contention, argues that if, as we have found, a judicial proceeding was necessary, the judicial proceeding initiated on August 15, 1974, was not pending at the close of the Mabury Trust's fiscal years ended September 30, 1977, September 30, 1978, and September 30, 1979, because the trust failed to diligently pursue its judicial remedies after January 28, 1976. See sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs.

We believe on the facts of this case that section 4942 was inapplicable to the Mabury Trust to the extent that it continued to accumulate income in accordance with its governing instrument following the termination of the judicial proceeding instituted on November 1, 1971.[12]

The stipulated exhibits plainly show that the only judicial proceeding initiated by the Mabury Trust to reform, or to excuse it from compliance with, the provisions of its governing instrument requiring accumulation of income was the proceeding commenced on or about November 1, 1971. The Petition to Change Terms of Trust and for Instructions filed with the Los Angeles Superior Court on or about November 1, 1971, expressly asked the court to reform the Mabury Trust's governing instrument to require that income and additional amounts, if necessary, be distributed at such time and in such manner as not to subject the trust to tax under section 4942. After that request was denied, no notice of appeal was filed and no further proceedings seeking reformation of, or excuse from compliance with, the provisions of the Mabury Trust's governing instrument requiring accumulation of income was commenced.

The petition filed on August 15, 1974, dealt solely with the

---

[12]As indicated above, petitioner assumes that the judicial proceeding which commenced on or about Nov. 1, 1971, terminated on Dec. 9, 1971. Respondent has not addressed the issue of when that judicial proceeding terminated. Although we disagree with petitioner's assumption, we believe that the proceeding initiated on or about Nov. 1, 1971, terminated during the Mabury Trust's fiscal year ended Sept. 30, 1972. See Cal. Civ. Proc. Code sec. 1049 (West 1980) (providing that an action is deemed to be pending until the time for appeal has passed), and Cal. R. Ct. 2 (prescribing time for filing a notice of appeal from a judgment of a California Superior Court).

Mabury Trust's distributing *corpus* for its taxable year beginning October 1, 1972, in which its minimum investment return exceeded its adjusted net income. The petition emphasized a portion of section 53.4942(a)-2(e)(3), Foundation Excise Tax Regs., that indicates any private foundation which instituted a judicial proceeding that failed to reform, or excuse it from complying with, provisions of a governing instrument in effect on May 26, 1969, which require accumulation of income and prohibit invasion of corpus, will not be required to satisfy the requirements of section 4942 to the extent that it is required to accumulate income, but will be required to distribute the excess of its minimum investment return over its adjusted net income for any taxable year for which there is such an excess. A final paragraph asked the court for any such further order as it might deem proper. However, the entire thrust of the efforts of the Mabury Trust's trustee in this second proceeding was to secure instructions from the court concerning to whom he should distribute corpus to avoid the imposition of the section 4942 excise taxes.

As indicated in note 12, *supra*, the proceeding commenced on or about November 1, 1971, terminated during the Mabury Trust's fiscal year ended September 30, 1972. Therefore, beginning with the first fiscal year following the fiscal year ended September 30, 1972, to the extent that the Mabury Trust is required to accumulate income under the mandatory terms (as in effect on May 26, 1969, and at all times thereafter) of its governing instrument, the Mabury Trust is not required to meet the requirements of section 4942. Sec. 101(l)(3) of the Tax Reform Act; sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs. Thus, beginning with the first fiscal year after the fiscal year ended September 30, 1972, the distributable amount of the Mabury Trust is to be reduced by the amount of income required to be accumulated. Sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs.

Since for each of the fiscal years ended September 30, 1974, and September 30, 1975, the Mabury Trust's adjusted net income exceeded its minimum investment return and it was required to accumulate all of its income, its distributable amount for both years is reduced to zero. Sec. 53.4942(a)-2(e)(3), Foundation Excise Tax Regs. Its "undistributed income" for both years, therefore, is zero. Sec. 4942(c). Hence, the Mabury

Trust is not liable for the excise taxes determined by respondent. Sec. 4942(a) and (b).

*Decisions will be entered for the petitioner.*