THE "MISS ELIZABETH" D. LECKIE SCHOLARSHIP FUND, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5028-84X.        Filed July 30, 1986.

---

252

*David M. Wooldridge* and *Allan J. Chappelle*, for the petitioner.

*Dianne I. Crosby*, for the respondent.

OPINION

GERBER, *Judge*: Petitioner brings this action for a declaratory judgment, pursuant to section 7428,[1] seeking a redetermination of respondent's adverse ruling as to petitioner's status as an operating foundation under section 4942(j)(3). The record in this case consists of a stipulated administrative record with attached exhibits, and is incorporated herein by this reference. See Rules 210(b)(11) and 217(a).

Petitioner, the "Miss Elizabeth" D. Leckie Scholarship Fund (sometimes referred to as the foundation or the trust), is a charitable trust created by an agreement executed

---

[1]All section references are to the Internal Revenue Code of 1954 as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.

November 1, 1982,[2] under the laws of the State of Alabama (the trust agreement). Ettie B. Cheatham (Cheatham) established the foundation and serves as the trustee. Petitioner's principal office is at 604 East Commerce Street, Greenville, Alabama 36037.

On September 9, 1983, respondent issued a determination letter to petitioner, finding that the foundation is exempt from Federal income tax under section 501(c)(3) and that the foundation is a private foundation within the meaning of section 509(a). On November 29, 1983, respondent issued a final adverse ruling as to petitioner's status as an "operating foundation" within the meaning of section 4942(j)(3).

Petitioner subsequently exhausted all of its administrative remedies. On February 29, 1984, petitioner filed a petition in this Court seeking a declaratory judgment as to respondent's final adverse determination letter.

Since this is an action for a declaratory judgment, our decision is based solely on the administrative record. The facts, as stipulated, are assumed to be true. Rule 217. The burden of proof as to the grounds set forth in the notice of determination lies with petitioner. Rule 217.

Butler County is one of the poorest counties in Alabama.[3] Many of the children do not return to the county once they have completed their education. The foundation seeks to raise the standard of living in Butler County (the county) by assisting the children of its residents in obtaining a college education and encouraging those students to return to the county to live. The foundation accomplishes this objective by providing funds for their college educational expenses, getting the students involved in local civic affairs and business, and assisting them in finding summer employment in the county.

The trust agreement provides that a Board of Examiners (the board) be appointed, consisting of five members, who are resident citizens of Butler County. The board's duties include doing any and all acts it deems appropriate to

---

[2] The operation of the trust created therein was made retroactive to Dec. 17, 1981, the day that Ettie B. Cheatham, the donor, made a series of cash contributions to the trust. The trust was formed on Nov. 15, 1981.

[3] In 1982, per capita income in Butler County, Alabama, was $7,174, while the average per capita income in the United States was $11,100. Out of 67 counties in Alabama, 45 counties had higher per capita income than Butler County. See 64 Survey of Current Business, No. 4, at 30-35 (April 1984).

promote Butler County as the place such students should live and work, meeting annually to select scholarship recipients,[4] and determining the amount of each scholarship.[5] Other specific duties of the board, as enumerated in the trust agreement, are to contact scholarship recipients periodically as well as to monitor their progress.

In addition, the board agreed to undertake particular activities on a volunteer basis. These activities include: Assisting scholarship recipients in finding summer jobs in Butler County; introducing recipients to Butler County officials, business, and professional leaders; conducting tours of Butler County and highlighting its positive aspects; compiling data promoting Butler County as a desirable place to live; compiling statistics regarding the role and success of the foundation in accomplishing the return of individuals to Butler County to work and reside; and upgrading the program which encompasses taking all steps necessary and appropriate to achieve its objective of getting well educated people to live and work in Butler County. The only salaried employee is the trust's secretary. Since the trust does not provide adequate income to finance all of the activities required to accomplish its objectives, a substantial amount of free time must be provided by unpaid board members and volunteers.

Petitioner was initially funded by a charitable contribution of investments worth $135,986.11, donated by Cheatham.[6] All interest income generated by the trust assets is used to pay petitioner's administrative expenses and to provide scholarships.

---

[4] The trust agreement provides that in selecting scholarship recipients, the board should consider (in the order named) the potential recipient's need, character, ability to successfully complete a college education; and if the potential recipient previously attended college, the record of that student while in college.

[5] The trust agreement limits the amount of scholarship moneys available to $1,000 per recipient, and provides that the moneys are to be paid directly to the college or university and applied first to tuition payable, then to books, and finally, any excess is to be paid to the recipient for living expenses.

[6] As of Dec. 31, 1981, the fund assets consisted of the following:

| | |
|---|---|
| Savings account, Greenville Bank (#411-4023-2) | $500.28 |
| Williams mortgage loan | 36,845.26 |
| Certificate of deposit (#20987) | 49,835.19 |
| Certificate of deposit (#23223) | 2,286.82 |
| Certificate of deposit (#24698) | 45,018.07 |
| Certificate of deposit (#24810) | 1,500.49 |
| Total | 135,986.11 |

Petitioner's sole source of income since the initial endowment has been interest earned on the endowment. Petitioner expects to earn $6,600 interest income annually, with projected annual expenses of $6,000 in scholarships and $600 in administrative expenses.

The issue we must decide is whether petitioner qualifies as a "private operating foundation" under section 4942(j)(3). Respondent argues that the moneys petitioner spends on scholarships ($6,000 out of $6,600 income per year) are not "qualifying distributions * * * directly for the active conduct of the activities constituting the purpose or function for which it [petitioner] is organized and operated."[7] Sec. 4942(j)(3)(A). Thus, respondent argues, petitioner is not entitled to "private operating foundation" status. Furthermore, respondent contends that petitioner fails each of the three tests (the assets, endowment, and public support tests), one of which petitioner must pass to attain "operating status." Petitioner argues that its scholarship grants are qualifying distributions as required by section 4942(j)(3) and defined in section 53.4942(b)-1(b)(2)(ii), Foundation Excise Tax Regs., and that it meets the endowment test, thereby fulfilling all statutory requirements. Alternatively, petitioner contends that section 53.4942(b), Foundation Excise Tax Regs., is invalid.

We find that petitioner meets the requirements of section 4942(j)(3) and the regulations promulated thereunder. Accordingly, petitioner is entitled to "private operating foundation" status.[8]

Section 4942 is part of the detailed statutory provisions of the Tax Reform Act of 1969[9] which were designed to combat then existing abuses in the formation and operation of exempt organizations. One such abuse was the availability of a current deduction for the donor with a corresponding ability by the foundation to delay actual distribution for charitable purposes. This could occur when a private

---

[7] That the scholarships are qualifying distributions within the meaning of sec. 4942(j)(3) as defined in sec. 4942(g)(1) and (2) is not at issue. That the scholarships are made directly for the active conduct of the activities constituting the purpose or function for which petitioner is organized and operated is at issue. For convenience, however, we sometimes phrase the issue as simply whether the scholarships are qualifying distributions.

[8] We, therefore, do not find it necessary to consider the validity of sec. 53.4942(b)-1(b)(2)(ii)(B), Foundation Excise Tax Regs.

[9] Pub. L. 91-172, 83 Stat. 487.

foundation invested in assets that produced no current income, and made no distributions. See S. Rept. 91-552 (1969), 1969-3 C.B. 423, 446, 447. Accordingly, section 4942 requires that certain private foundations make a minimum level of charitable distributions. It further provides that an initial tax and an additional tax be imposed if such private foundation fails to currently distribute its distributable amount in the form of qualifying distributions.[10]

Section 4942(a)(1), however, exempts "operating foundations" from these requirements. Section 4942(j)(3) defines "operating foundations"[11] as follows:

(3) OPERATING FOUNDATION.—For purposes of this section, the term "operating foundation" means any organization—
   (A) which makes qualifying distributions (within the meaning of paragraph (1) or (2) of subsection (g)) *directly for the active conduct of the activities constituting the purpose or function for which it is organized and operated* equal to substantially all of the lesser of—
       (i) its adjusted net income (as defined in subsection (f)), or
       (ii) its minimum investment return; and

      \*     \*     \*     \*     \*     \*     \*

   [B](ii) which normally makes qualifying distributions (within the meaning of paragraph (1) or (2) of subsection (g)) directly for the active conduct of the activities constituting the purpose or function for which it is organized and operated in an amount not less than two-thirds of its minimum investment return (as defined in subsection (e)) * * *

      \*     \*     \*     \*     \*     \*     \*

Notwithstanding the provisions of subparagraph (A), if the qualifying distributions (within the meaning of paragraph (1) or (2) of subsection (g)) of an organization for the taxable year exceed the minimum investment return for the taxable year, clause (ii) of subparagraph (A) shall not apply unless substantially all of such qualifying distributions are made directly for the active conduct of the activities constituting the purpose or function for which it is organized and operated.
   [Emphasis added.]

Section 53.4942(b)-1(b)(1), Foundation Excise Tax Regs., enunciates the general rule that qualifying distributions are not made " 'directly for the active conduct of activities' unless such qualifying distributions are used by

---

[10] See *Trust Under the Will of Mabury v. Commissioner*, 80 T.C. 718 (1983), for a discussion of the imposition of tax under sec. 4942 and its effect.

[11] Operating foundation status yields many advantages. Besides not being subject to sec. 4942 tax, a foundation is more likely to attract additional support from other grant-making foundations, eligible to receive 50-percent charitable contributions, and eligible for more favorable rules on gifts of appreciated property.

the foundation itself, rather than by or through one or more grantee organizations which receive such qualifying distributions directly or indirectly from such foundation."

Section 53.4942(b)-1(b)(2), Foundation Excise Tax Regs., provides an exception to the general rule. That regulation considers "Payments to individual beneficiaries," and provides in pertinent part:

(i) *In general.* If a foundation makes or awards grants, scholarships, or other payments to individual beneficiaries * * * to support active programs conducted to carry out the foundation's charitable, educational, or other similar exempt purpose, such grants, scholarships, or other payments will be treated as qualifying distributions made directly for the active conduct of exempt activities for purposes of paragraph (a) of this section only if the foundation, apart from the making or awarding of the grants, scholarships, or other payments, otherwise maintains some significant involvement (as defined in subdivision (ii) of this subparagraph) in the active programs in support of which such grants, scholarships, or other payments were made or awarded. *Whether the making or awarding of grants, scholarships, or other payments constitutes qualifying distributions made directly for the active conduct of the foundation's exempt activities is to be determined on the basis of the facts and circumstances of each particular case. The test applied is a qualitative, rather than a strictly quantitative, one. Therefore, if the foundation maintains a significant involvement (as defined in subdivision (ii) of this subparagraph) it will not fail to meet the general rule of subparagraph (1) of this paragraph solely because more of its funds are devoted to the making or awarding of grants, scholarships, or other payments than to the active programs which such grants, scholarships, or other payments support.* However, if a foundation does no more than select, screen, and investigate applicants for grants or scholarships, pursuant to which the recipients perform their work or studies alone or exclusively under the direction of some other organization, such grants or scholarships will not be treated as qualifying distributions made directly for the active conduct of the foundation's exempt activities. The administrative expenses of such screening and investigation (as opposed to the grants or scholarships themselves) may be treated as qualifying distributions made directly for the active conduct of the foundation's exempt activities.

(ii) *Definition.* For purposes of this subparagraph, a foundation will be considered as maintaining a *"significant involvement"* in a charitable, *educational, or other similar exempt activity in connection with which grants, scholarships, or other payments are made or awarded if—*

(A) *An exempt purpose of the foundation is the relief of poverty * * * and its exempt activities are designed to ameliorate conditions among a poor * * * class of persons * * *, the making or awarding of the grants or other payments to accomplish such exempt purpose is direct and without*

*the assistance of an intervening organization or agency, and the foundation maintains a \* \* \* voluntary staff of \* \* \* personnel who supervise and direct the activities described in this subdivision (A) on a continuing basis \* \* \**
  [Emphasis added.]

The controversy centers on whether the foundation's granting of scholarships is a "qualifying distribution \* \* \* directly for the active conduct of the foundation's exempt activities." We find that it is.

Respondent argues that the foundation merely screens and selects applicants. Petitioner, on the other hand, contends that it maintains a significant involvement in its exempt activity, and, therefore, the scholarship amounts should be considered as qualifying distributions. We agree with petitioner.

The determination of whether the scholarships made by petitioner constitute "qualifying distributions expended directly for the active conduct of the foundation's exempt activities," is a purely factual one, made on a qualitative basis. Sec. 53.4942(b)-1(b)(2), Foundation Excise Tax Regs. An exempt organization, such as petitioner, that uses more of its funds for scholarships than for any other purpose can still be considered a private operating foundation if it maintains a significant involvement in an exempt activity for which such scholarships are awarded. "Significant involvement" occurs if an exempt purpose of the foundation is to relieve poverty and its conditions among a poor class of persons, the making of such payments is direct, and the foundation has personnel who supervise and direct the activities described on a continuing basis. Sec. 53.4942(b)-1(b)(2)(ii)(A), Foundation Excise Tax Regs.

A careful review of the record is necessary to determine whether the foundation maintains a significant involvement in an exempt activity for which scholarships are awarded.

Whether petitioner maintains a significant involvement is a factual determination. Sec. 53.4942(b)-1(b)(2), Foundation Excise Tax Regs. A primary objective of the foundation is to improve the county. This objective is sought to be accomplished by giving Butler County high school students a chance to receive a college education. The trust agreement sets forth the criteria by which the potential scholarship

beneficiaries are to be selected. The most important consideration is need. After selection of the scholarship recipients, the board, on a volunteer basis, maintains contact with the recipients, assists them in finding summer jobs in Butler County, introduces them to officials, business, and professional leaders of the county, conducts county tours and compiles data and statistics promoting the county as a desirable place to live and work. Such activity hardly qualifies as mere selection, screening, and investigation of applicants. We believe that an exempt purpose of petitioner is to relieve poverty in a poor class of people through aiding needy students in Butler County to obtain a college education and through encouraging those students to return to the county, thus raising the standard of living. Accordingly, we find that under these facts, petitioner's program amounts to a "significant involvement" as defined by section 53.4942(b)-1(b)(2)(ii)(A), Foundation Excise Tax Regs.[12]

In addition, petitioner meets the requirements of the endowment test. Section 53.4942(b)-2(b)(1), Foundation Excise Tax Regs., provides that a foundation will satisfy the endowment test if it normally makes "qualifying distributions (within the meaning of paragraph (a)(2) of sec. 53.4942(a)-3) directly for the active conduct of activities constituting its charitable, educational, or other similar exempt purpose in an amount not less than two-thirds of its minimum investment return."

Respondent argues that petitioner should not be allowed to use the endowment test because the legislative history indicates that petitioner is not the type of exempt organization for which this test was intended and that, in any event, petitioner fails to satisfy this test because petitioner does not expend the required amount of funds "directly for the active conduct of its activities." Rather, respondent argues, Congress intended this alternative test to apply to organizations whose personal services are so great in relation to their charitable assets that they are unable to pay for the personal services out of their small endowment. See S. Rept.

---

[12] We, therefore, need not consider whether petitioner maintained a "significant involvement" as outlined in sec. 53.4942(b)-1(b)(2)(ii)(B), Foundation Excise Tax Regs.

91-552 (1969), 1969-3 C.B. 423. We disagree with respondent's analysis.

First, we consider respondent's argument that Congress did not intend that an organization with petitioner's pattern of expenditures be able to take advantage of the endowment test. Respondent suggests that only certain types of exempt organizations should be able to take advantage of the alternative tests. Although the legislative history indicates that the Senate Finance Committee amendment introducing the endowment test was in response to the situation respondent suggests, we do not believe that the amendment was intended to limit the test to a specific type of organization. Neither the statute nor the regulations support respondent's argument.

We do not take as narrow a view of the application of the endowment test as does respondent. Where a statute is clear on its face, especially when that statute is part of a complex set of statutory provisions marked by a high degree of specificity, we require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein. *Huntsberry v. Commissioner*, 83 T.C. 742, 747-748 (1984). Accordingly, we refuse to construe section 4942(j)(3)(B)(ii) as applying only to certain types of exempt organizations. See *Garrison v. Commissioner*, 86 T.C. 764 (1986).

Having decided that petitioner is entitled to use the endowment test, we must now consider whether petitioner meets the requirements of that test. Petitioner will satisfy the endowment test if it normally makes qualifying distributions directly for the active conduct of activities constituting its exempt purpose in an amount not less than two-thirds of its minimum investment return.[13] Petitioner, therefore, must make qualifying distributions of approximately $4,533[14] to satisfy the test.[15] Petitioner spends

[13] Minimum investment return is defined in sec. 4942(e) and in sec. 53.4942(a)-2(c), Foundation Excise Tax Regs. Generally, an organization's minimum investment return is 5 percent of the fair market value of the organization's assets, other than those used directly in carrying on its exempt activities. Sec. 53.4942(a)-2(c), Foundation Excise Tax Regs.

[14] In this case, minimum investment return is determined by multiplying petitioner's total investments by 5 percent. That figure is $6,799.31 ($135,986.11 x .05). Two-thirds of that amount (the minimum amount of qualifying distributions that petitioner must make to pass the endowment test) is approximately $4,533.

[15] Respondent, without authority, apparently contends that minimum investment return is an actual income requirement, and that petitioner therefore fails the endowment test because

$6,000 each year in scholarships and $600 in expenses related thereto.

We have already determined that under section 4942(j)(3)(A) the scholarship grants in question are qualifying distributions made directly for the active conduct of petitioner's exempt activities. Section ʟ3.4942(b)-2(b)(2), Foundation Excise Tax Regs., states that the phrase at issue is to be given the same meaning as in paragraph (b) of section 53.4942(b)-1, Foundation Excise Tax Regs. Petitioner, therefore satisfies the endowment test as stated under section 4942(j)(3)(B)(ii).

Accordingly, petitioner is qualified as a private operating foundation as defined by section 4942(j)(3).

*Decision will be entered for the petitioner.*

---

petitioner's expected annual income is less than its minimum investment return (5 percent of petitioner's assets). This argument lacks merit. Minimum investment return is defined in terms of assets, not income, and imposes no actual income requirement. See sec. 4942(e). The endowment test requires only that petitioner "normally make qualifying distributions directly for the active conduct of the activities constituting the purpose or function for which it is organized and operated in an amount not less than two-thirds of its minimum investment return." We note, also, that respondent's regulations do not consider an organization's actual income when determining whether an organization satisfies the endowment test. See Sec. 53.4942(b)-2(b)(3), Foundation Excise Tax Regs.